YATES, Judge.
This is the second time the parties have been before this court. See S.W.M. v. D.W.M., 723 So.2d 1271 (Ala.Civ.App. 1998). In July 1996, the trial court divorced S.W.M. (“the mother”) and D.W.M. (“the former husband”). The judgment incorporated a settlement agreement, which provided, in pertinent part, that “J.M. and D.M. were children ‘born of the marriage.’ ” Id. at 1271. Primary custody of J.M. was awarded to the former husband; primary custody of D.M. was awarded to the mother. In 1997,- the former husband moved the court to find the mother in contempt for denying him visitation with D.M. The mother counterclaimed, asking that she be awarded custody of both children, because, she said, the former husband was not the biological father of D.M. The trial court held an ore tenus proceeding in which evidence was introduced indicating that R.H.[1] was D.M.’s biological father; however, the court ruled that the mother could not reopen the issue of paternity, because the divorce judgment had been entered. This court upheld the trial court’s ruling, stating that pursuant to § 26-17A-1, Ala.Code 1975, only “a ‘defendant’ who ‘has been declared the legal father’ of a child” could reopen a paternity case. Id. at 1273. We also noted that the mother had not joined R.H. as an indispensable party and that the court had not ruled upon R.H.’s motion to intervene. Id. at 1272.
In August 1998, the former husband sought emergency relief to obtain custody of both minor children, alleging that R.H. had committed violent acts in the presence of the children; the court entered a temporary order preventing R.H. from being in the presence of the children. In October 1998, the mother filed a “Motion for Relief from Order,” stating that she and R.H. had married and that the restriction was placing an undue hardship on them. In November 1998, the mother moved to join R.H. as an indispensable party, based on his status as D.M.’s alleged biological father. In May 1999, the mother and R.H. sought custody of D.M. and moved for the appointment of a guardian ad litem.
Following an ore tenus proceeding, the court, on June 2, 1999, entered a detailed order, stating, in pertinent part:
“First: The intervenor [R.H.] is the biological father of the child, [D.M.], as between him and the defendant [the former husband] in this case. [R.H.] and *1185 the [mother] carried on a surreptitious and illicit relationship while the [mother] continued to live with the [former husband] as his wife from July or August of 1994 until the birth of the child on May 2, 1995. During this period of time the [mother] continued to live with the [former husband] as his wife and concealed her illicit affair from the [former husband]. She (and [R.H.]) had good cause to know that the child she was carrying was not or at least might not be the child of the [former husband]. Instead of investigating the possibility that [R.H.] might be the child’s father, the [mother] listed the child as the [former husband’s] and entered into an agreement whereby she was not compelled to pay the [former husband] child support for the elder child of the parties, in [the former husband’s] custody, because she was supporting [D.M.], the other child of the marriage who was in her custody....
“Second: ... Since the separation of the [mother] and the [former husband] and until the trial of this case there is no evidence of [R.H.] acting or attempting to act as a father and parent towards [D.M.]. The only shred of evidence of paternal love is that [R.H.] bought the child an electric ‘red Jeep.’ The court is satisfied that [R.H.] caused the child grief and pain by threatening to throw the jeep off of a bridge and by taking the jeep away from the child’s home to [R.H.’s] home, depriving the child of its use. The problems concerning the jeep became so great that the [mother] ‘solved’ the problem when she poured flammable liquid over the child’s treasured toy and burned it. She made photographs of the burned remains of the toy.
“Third: [R.H.] has, on numerous occasions brought grief and terror to the child. This court finds that [R.H.] has, on several occasions, assaulted the [mother], now his wife, in the presence of [D.M.]. [The mother] has taken at least two warrants for [R.H.] for beating and choking her, only to have them dismissed. [R.H.] has also assaulted the [former husband] in the presence of the child. [The mother], rather than trying to prevent the assault, merely urged her lover to ‘take him down the road’ so the child could not see the man he considers his father beaten up. [R.H.] has run the child’s maternal grandfather off of the road, with the child in the grandfather’s vehicle, and assaulted the grandfather. [D.M.] was so terrified, he screamed all the way home and wet his pants. When the deputies came to transfer custody of [D.M.], [the mother] was arrested because of her conduct and [R.H.] also had to be arrested because of his attempts to again assault the [former husband]. [R.H.] threatened to the deputies as they took him to jail that he would end this custody case by blowing [the former husband’s] head off. Following his dog causing substantial damage to [D.M.], [R.H.] refused to dispose of the dog. He compared putting the dog down with someone killing one of the children involved in this case....
“Fourth: The [former husband], while he may not be ... the biological father of the child, deeply loves the child ..., considers him to be his son and in every way has been a good and loving parent to [D.M.]....
“Fifth: The court finds that here is clear and convincing evidence that a termination of [R.H.’s] parental rights would be in the best interest of the child [D.M.]. [R.H.] has amply demonstrated that he is unable or unwilling to discharge his responsibility to and for the child. His conduct in substantially abandoning the child following its birth and continuing into the child’s second year of life after his lover was divorced, indicates a substantial lack of concern for the child. His failure to exercise parental rights and duties enforce this conclusion. His disregard for the child’s welfare when he visited violence upon the [mother], when he assaulted the [for *1186 mer husband] and when he attacked the grandfather all in the child’s presence are additional factors. The court finds that such conduct is unlikely to change in the foreseeable future. This court hereby ORDERS and DECLARES that any parental rights of [R.H.] in and to the child known as [D.M.] are hereby terminated and ended.
“Sixth: As between the [mother] and [former husband], the [former husband] is the father of both children. The court finds that for the reasons stated above it is clear and manifest that the best interest of both children will be served by placing their custody with the father that loves and cares for them, [the former husband].... The [home of the mother and R.H.] is such a poor choice for the children that the [maternal grandfather] has chosen to support [the former husband], his former son-in-law, in his quest for custody.... The best interest of the children, including [D.M.] who was previously in the [mother’s] custody, will be so clearly served and improved that any inherent disruption would be minuscule in comparison. In fact, the [former husband] has had custody of both children for a long period of time and they are flourishing under his care and supervision. The court hereby modifies any prior judgment so that the [former husband] henceforth has the care, custody and control of the minor children of this marriage.”
The court awarded standard visitation to the mother and ordered her to pay child support. R.H. appeals, arguing that the court lacked the authority to terminate his parental rights; the mother is not a party to this appeal.
This court has previously addressed the authority of a circuit court to terminate parental rights. In N.W.S.S. v. S.D.S., 747 So.2d 339 (Ala.Civ.App.1999), we stated:
“The statute that governs jurisdiction in parental-rights-termination cases is § 12 — 15—30(b), Ala.Code 1975, which states:
“ ‘(b) The [juvenile] court shall also exercise original jurisdiction of the following proceedings, which shall be governed by the laws relating thereto:
‘“(6) Termination of parental rights.’
“The trial court entered an order allowing the termination of the father’s parental rights pursuant to a settlement agreement in a divorce action. Because § 12-15-30 establishes exclusive jurisdiction in the juvenile court to terminate parental rights, we conclude that the circuit court did not have subject-matter jurisdiction to rule in this matter. We note that this court has ruled that circuit courts have concurrent jurisdiction in § 12-15-30 proceedings where a divorce action has been filed; however, the exception provision applies only to matters involving dependency, custody or guardianship and does not apply in termination-of-parental-rights proceedings.”
Id. at 340-41; see also, B.C.M. v. J.T., 738 So.2d 1266 (Ala.Civ.App.1999). Based on § 12-15-30, Ala.Code 1975, and our prior rulings, we conclude that, R.H.’s abhorrent conduct notwithstanding, the trial court did not have subject-matter jurisdiction to address the issue of the termination of parental rights. Accordingly, we reverse that portion of the judgment terminating the parental rights of R.H., and we remand the case for the court to enter an order consistent with this opinion. The judgment is affirmed in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE and THOMPSON, JJ., concur.
CRAWLEY, J., concurs in part and dissents in part.

. In February 1998, R.H. moved to intervene to establish his parental rights as to D.M.