CRAWLEY, Judge.[1]
This is the third time this matter has been before this court. See S.W.M. v. D.W.M., 723 So.2d 1271 (Ala.Civ.App.1998) (“D.W.M. I”); R.H. v. D.W.M., 772 So.2d 1183 (Ala.Civ.App.2000) (“D.W.M. II”). For a better understanding of the factual and procedural background of this case, we quote from the opinion in D.W.M. II, 772 So.2d at 1184-86:
“In July 1996, the trial court divorced S.W.M. (‘the mother’) and D.W.M. (‘the former husband’). The judgment incorporated a settlement agreement, which provided, in pertinent part, that ‘J.M. and D.M. were children “born of the marriage.” ’ [D.W.M. I, 723 So.2d] at 1271. Primary custody of J.M. was awarded to the former husband; primary custody of D.M. was awarded to the mother. In 1997, the former husband moved the court to find the mother in contempt for denying him visitation with D.M. The mother counterclaimed, asking that she be awarded custody of both children, because, she said, the former husband was not the biological father of D.M. The trial court held an ore tenus proceeding in which evidence was introduced indicating that R.H.* was D.M.’s biological father; however, the court ruled that the mother could not reopen the issue of paternity, because the divorce judgment had been entered. This court upheld the trial court’s ruling, stating that pursuant to § 26-17A-1, Ala. Code 1975, only ‘a “defendant” who “has been declared the legal father” of a child’ could reopen a paternity case. Id. at 1273. We also noted that the mother had not joined R.H. as an indispensable party and that the court had not ruled upon R.H.’s-motion to intervene. ■ Id. at 1272.
“In August 1998, the former husband sought emergency relief to obtain custody of both minor children, alleging that R.H. had committed violent acts in the presence of the children; the court entered a temporary order preventing R.H. from being in the presence of the children. In October 1998, the mother filed a ‘Motion for Relief from Order,’ stating that she and R.H. had married and that the restriction was placing an undue hardship on them. In November 1998, the mother moved to join R.H. as an indispensable party, based on his status as D.M.’s alleged biological father. In May 1999, the mother and R.H. sought custody of D.M. and moved for the appointment of a guardian ad litem.
“Following an ore tenus proceeding, the court, on June 2, 1999, entered a detailed order, stating, in pertinent part:
“ ‘First: The intervenor [R.H.] is the biological father of the child, [D.M.], as between him and the defendant [the former husband] in. this case. [R.H.] and the [mother] carried on a surreptitious and illicit relationship while the [mother]. continued to live with the [former husband] as his wife from July or August of 1994 until the birth of the child on May 2, 1995. During this period of time the [mother] continued to live with the [former husband] as his wife and concealed her illicit affair from the [former husband]. She (and [R.H.]) had good cause to know that the child she was carrying was not or at least might not be the child of the [former husband]. Instead of investigating the possibility that [R.H.] might be the child’s father, *446 the [mother] listed the child as the [former husband’s] and entered into an agreement whereby she was not compelled to pay the [former husband] child support for the elder child of the parties, in [the former husband’s] custody, because she was supporting [D.M.], the other child of the marriage who was in her custody....
[[Image here]]
“ ‘[In the second and third paragraphs of the judgment, the trial court stated factual findings related to R.H.’s mistreatment of the child D.M., as well as R.H.’s acts of violence to the mother, the mother’s father, and the former husband, D.W.M.]
“ ‘Fourth: The [former husband], while he may not be ... the biological father of the child, deeply loves the child ..., considers him to be his son and in every way has been a good and loving parent to [D.M.]....
“ ‘Fifth: The court finds that here is clear and convincing evidence that a termination of [R.H.’s] parental rights would be in the best interest of the child [D.M.]. [R.H.] has amply demonstrated that he is unable or unwilling to discharge his responsibility to and for the child. His conduct in substantially abandoning the child following its birth and continuing into the child’s second year of life after his lover was divorced, indicates a substantial lack of concern for the child. His failure to exercise parental rights and duties enforce this conclusion. His disregard for the child’s welfare when he visited violence upon the [mother], when he assaulted the [former husband] and when he attacked the grandfather all in the child’s presence are additional factors. The court finds that such conduct is unlikely to change in the foreseeable future. This court hereby ORDERS and DECLARES that any parental rights of [R.H.] in and to the child known as [D.M.] are hereby terminated and ended.
“ ‘Sixth: As between the [mother] and [former husband], the [former husband] is the father of both children. The court finds that for the reasons stated above it is clear and manifest that the .best interest of both children will be served by placing their custody with the father that loves and cares for them, [the former husband].... The [home of the mother and R.H.] is such a poor choice for the children that the [maternal grandfather] has chosen to support [the former husband], his former son-in-law, in his quest for custody.... The best interest of the children, including [D.M.] who was previously in the [mother’s] custody, will be so clearly served and improved that any inherent disruption would be minuscule in comparison. In fact, the [former husband] has had custody of both children for a long period of time and they are flourishing under his care and supervision. The court hereby modifies any prior judgment so that the [former husband] henceforth has the care, custody and control of the minor children of this marriage.’
“The court awarded standard visitation to the mother and ordered her to pay child support. R.H. appeals, arguing that the court lacked the authority to terminate his parental rights; the mother is not a party to this appeal.
“*In February 1998, R.H. moved to intervene to establish his parental rights as to D.M.”
In D.W.M. II, this court affirmed the award of custody to D.W.M. but reversed the termination of R.H.’s parental rights, *447 holding that the circuit court lacked subject-matter jurisdiction to enter an order purporting to terminate those rights because, pursuant to § 12 — 15—30(b)(6), Ala. Code 1975, the juvenile courts have exclusive original jurisdiction in parental-rights termination proceedings. 772 So.2d at 1186.[2]
On remand, the circuit court amended its judgment by striking the provisions purporting to terminate R.H.’s parental rights and leaving intact the remaining provisions of the judgment. On May 24, 2000, R.H. filed a postjudgment motion which was denied on August 5, 2000; R.H. appealed to this court.
We dismiss the appeal. Pursuant to § 26 — 17—5(a)(1), Ala.Code 1975, and Ex parte Presse, 554 So.2d 406 (Ala.1989), R.H. had no standing to intervene in the custody proceeding and he has no standing to appeal from the judgment awarding custody that, he alleges, is adverse to him. See State v. Property at 2018 Rainbow Drive, 740 So.2d 1025 (Ala.1999). “When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.” Id. at 1028. If the trial court had no subject-matter jurisdiction to entertain R.H.’s motion to intervene, then this court has no subject-matter jurisdiction to entertain R.H.’s appeal. See Jones v. Sears Roebuck & Co., 342 So.2d 16, 17 (Ala.1977); Ollis v. Ollis, 636 So.2d 458 (Ala.Civ.App.1994).
The appellee’s request for an attorney fee on appeal is granted in the amount of $1,875.
APPEAL DISMISSED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.

. This case was originally assigned to another judge on the Court of Civil Appeals. It was reassigned to Judge Crawley on December 5, 2001.

. The author of this opinion dissented in part, pointing out that, because "R.H. has no parental rights as to D.M., there was no need for a parental-rights-termination proceeding.” 772 So.2d at 1186 (Crawley, J., concurring in part and dissenting in part) (emphasis in original).