NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE (NAACP), and New Haven Branch of the NAACP

v.

TOWN OF EAST HAVEN.

Civ. No. 3:93CV1050(PCD).

United States District Court, D. Connecticut.

March 2, 1995.

David N. Rosen, Rosen & Dolan, P.C., New Haven, CT, David L. Rose, Joshua Rose, Washington, DC, for NAACP, New Haven Branch of the NAACP.

Hugh F. Keefe, Lynch, Traub, Keefe & Errante, New Haven, CT, for Town of East Haven.

Hugh F. Keefe, Lynch, Traub, Keefe & Errante, Thomas W. Ude, Jr., Winnick, Ruben & Block, New Haven, CT, for East Haven Bd. of Educ.

## AMENDED RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, Chief Judge.

This action brought by the NAACP and its New Haven branch, "plaintiff", assert representation of named and unnamed black citizens and allege discrimination against its members by the Town of East Haven in it failure to hire on the basis of race in violation of 42 U.S.C. 2000e *et. seq.* (hereinafter Title VII). Defendant moves for summary judgment on the ground that plaintiff lack standing, fails to establish a prima facie case of discrimination under Title VII and fails to establish an existing policy which could result in a disparate impact upon NAACP members.

## I. BACKGROUND:

Plaintiff is a voluntary association representing the interest of its members and other black persons and seeking elimination of discriminatory employment practices which obstruct equal employment. Black members of NAACP and other black persons, all represented by plaintiff, have allegedly been injured by defendant's racially discriminatory employment practices, which are threatened to continue. (Compl. ¶ 5).

Plaintiff claims that members have applied or attempted to apply for employment with East Haven. Allegedly members who were injured are Edward Jefferson and John Highsmith thus conferring Article III standing.

Alleged statistical analysis strongly supports an inference of disparate treatment. Data compiled by the Equal Employment Opportunity Commission (EEOC) discloses that the private work force in East Haven is 17.7% black and the New Haven Primary Metropolitan Statistical Area is 13.6% black.[1] (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 2–3). East Haven has no full time black employees. *Id.* This disparity is described as a statistical variation between 4 and 6 standard deviations for every job category. Two standard deviations is described as probative that the variation is due to a factor other than chance. *Id.* at 5. Thus plaintiff claims to have established a prima facie case.

Plaintiff alleges disparate impact by policies and practices as follows:

a. Refusal to recruit and hire blacks on the same basis as whites.

b. A recruitment and hiring preference that favor residents over nonresidents.[2]

c. Recruiting and hiring relatives and friends of officials and employees of East Haven.

d. Failing or refusing to adopt objective, valid and nondiscriminatory hiring procedures; and

e. Failing or refusing to correct the effects of its past discriminatory policies and practices.

---

1. Private employers with 50 or more persons employed submit EEO-1 forms to EEOC. Data complied yields information about the workforce in a particular geographical area.

2. Of East Haven's approximately 26,144 residents, about 231 are black, or less than 1%. New Haven, immediately to the west, has a 31.5% black population. (Ex. 1 Census Excerpts)

(Compl. ¶ 17). The result is a work force consisting of not one full-time black employee.[3] (Compl. ¶ 8, 9).

## II. DISCUSSION:

 Summary judgment should only be granted when "the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56. "[I]n determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Donahue v. Windsor Locks Bd. of Fire Comm'r*, 834 F.2d 54, 57 (2d Cir.1987). The moving party bears the initial burden of demonstrating that no factual issues exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting). Once that burden is met, the opposing party must set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the non-movant "generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate." *American Int'l Group, Inc. v. The London American Int'l Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir. 1981).

### A. Standing

 Congress in enacting Title VII, intended to confer standing to the full extent authorized by Article III of the Constitution. *Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.*, 907 F.2d 1408 (3d Cir.1990). An association may have Article III standing, absent injury to itself, if it can establish that (1) one or more of its members would have standing; (2) the interest it seeks to protect is germane to its purposes; (3) neither the claim nor the relief requested requires participation of individual members in the lawsuit. *Associated General Contractors of Connecticut Inc. v. New Haven*, 130 F.R.D. 4, 7 (D.Conn.1990).

 To satisfy the first requirement, a member must have "some threatened or actual injury resulting from the putatively illegal activity." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Standing lies in the ability to assert a legally protected right, violated by the parties whose acts are challenged. *Id.* at 508, 95 S.Ct. at 2210. Pursuant to 42 U.S.C. 2000e–2(a) it is unlawful for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individuals of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Defendant claims that no NAACP member suffered an injury in fact. Defendant notes that plaintiff has not named any individual who completed the steps in the application process, offered no evidence that any NAACP member could reasonably believe that filing an application would be futile and has not articulated the precise procedure that makes filing futile. Defendant overstates the requirement.

Member Edward Jefferson obtained an application for a maintenance position from the Town in response to a *New Haven Register* advertisement sometime in 1992. (Ex. A at 15, 18). The application was returned to Town Hall by Edward Jefferson and his wife. *Id.* at 19–20. Mr. and Mrs. Jefferson called Town Hall over twenty-five times inquiring about the status of his application. *Id.* at 22. A myriad of reasons was offered as to why

---

**3.** The town employs 246 full-time employees and approximately 341 are employed in its school system. One part-time employee is black.

no response was forthcoming.[4] Approximately a year later Mrs. Jefferson phoned a local television station in response to a news story related to this action. Defendant then reacted to Jefferson's application. *Id.* at 24–25.

Plaintiff need not prove its case on the merits to establish standing. *Thompson v. County of Franklin,* 15 F.3d 245 (2d Cir. 1994). Title VII inures an enforceable right, the alleged violation of which confers standing. The foregoing sets forth neither a conjectural nor hypothetical but constitutes an actionable injury which confers standing.

### B. *Disparate Treatment*

In disparate treatment claims, under Title VII, plaintiff must establish a prima facie case of discrimination. Where gross statistical disparities can be shown, they alone may constitute prima facie proof of a pattern or practice of discrimination. *Hazelwood School Dist. v. United States,* 433 U.S. 299, 307–308, 97 S.Ct. 2736, 2741–42, 53 L.Ed.2d 768 (1977); *Ottaviani v. State Univ. of New York at New Paltz,* 875 F.2d 365, 371 (2d Cir.1989).

Plaintiff asserts that East Haven employs approximately 611 full time or regular employees none of whom are black. (Pl.'s Opp'n to Def.Mot. for Summ.J. at 2). Sixteen full time employees were hired between July 1, 1992 and June 30, 1993 none of whom are black. *Id.* The greater New Haven PSMA private workforce is 13.6% black and East Haven's private work force is 17.7% black. *Id.* at 3. Blacks generally have a higher representation in government than private industry. (Ex. G at 130). This evidence suggests a marked contrast between the working population of East Haven, and its employees. This disparity suggests the Town's less favorable treatment of blacks in employment. Defendant offers no contradiction or explanation.

Defendant first contends that plaintiff's prima facie case must be equivalent to that outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McDonnell Douglas* requires that any Title VII plaintiff must initially offer evidence sufficient to create an inference that employment decisions are discriminatorily based. *Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). Plaintiff has the initial burden of establishing an inference of a pattern or practice of discrimination. It is not bound by the elements defendant alleged.

Defendant next argues that no minimum threshold level of statistical significance establishes a Title VII prima facie case. *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). Although statistics are not to be used as a rule of law, *Ottaviani v. State Univ. of New York at New Paltz,* 875 F.2d at 373, unexplained standard deviations ranging between 4 and 6 for every job category are sufficiently substantial to constitute a prima facie case of employment discrimination. In addition plaintiff's anecdotal evidence raises a genuine issue of fact as to East Haven's alleged discriminatory employment practices. (Pl.'s Opp'n to Def.'s Mot. for Summ.J. at 5).

Finally, defendant claims that plaintiff's statistics are inherently flawed because the percentage of blacks employed in the private sector of East Haven were not considered and the number of black applicants in private and public sector jobs were omitted. Plaintiff relies on the availability of blacks in the New Haven PMSA. Defendant's 1976 Affirmative Action plan relied on the same figures and a revised 1991 Affirmative Action plan estimates external availability of blacks ranging from 6% to 20.7% for various job categories. Use of either data suggests a gross disparity between the availability of blacks and their representation in the East Haven workforce.[5] Defendant has

---

4. Edward Jefferson claims that he and his wife "got tired of calling" after hearing, "it's not here yet", there's no one hiring", or "we'll get back to you." (Ex. A at 22)

5. Defense counsel suggests that applicant flow might be a better measure. According to the

only available applicant flow data presented by defendant between 1987 and 1989, 2 of 416 applicants were black. There is no evidence to support a contention that the actual labor force available to East Haven is less than 0.5% black.

not demonstrated that plaintiff failed to make out a prima facie case for disparate treatment.

### C. *Disparate Impact*

 A disparate impact theory of liability pertains to employment practices that are fair in form but discriminatory in operation. *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Plaintiff must identify specific employment practices, then must offer statistical evidence sufficient to show that the practice has excluded *applicants* for jobs because of membership in a protected group. *Watson v. Fort Worth Bank*, 487 U.S. 977, 994, 108 S.Ct. 2777, 2788–89, 101 L.Ed.2d 827 (1987); *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).

Plaintiff concedes that there is no way to measure the effect of the selection procedures used. The only available evidence plaintiff contends is an East Haven applicant flow that is 99.6% non-black in contrast to a private workforce which is 17.7% black.

 "Preferential treatment and the use of quotas by public employees subject to Title VII can violate the Constitution, and it has long been recognized that legal rules leaving any class of employers with 'little choice' but to adopt such measures would be 'far from the intent of Title VII.'" *Id.* at 993, 108 S.Ct. at 2788. To prevent such an outcome, disparate impact analysis must operate within its proper bounds. Plaintiff's burden must go beyond showing that there are statistical disparities in the employer's workforce. It must establish that the practice caused the exclusion of applicants. As plaintiff concedes this cannot be accomplished. (Pl. Memo. in Opp'n to Summ. J. at 35). Therefore as a matter of law, plaintiff cannot succeed on a disparate impact theory. *Watson v. Fort Worth Bank*, 487 U.S. at 994, 108 S.Ct. at 2788–89.

### III. *CONCLUSION:*

Accordingly, summary judgment (doc. # 31) is granted in part as to the disparate impact claim and denied in part as to the issue of standing and disparate treatment.

SO ORDERED.