The dispositive issue in this case is whether a complaint filed by the City of Gadsden, seeking, pursuant to Ala. Code 1975, § 20-2-93, the "condemnation and forfeiture" of property owned by Gary Stedham, ever invested the Etowah Circuit Court with subject-matter jurisdiction. We answer that question in the negative.
The substantive facts out of which this confiscation action arose are relatively simple. Gary Stedham owned real estate on which contraband was discovered by police officers. A criminal drug-possession charge against Stedham was presented to a grand jury, but ultimately the grand jury "no billed" the charge. For all that appears of record, Stedham will never be prosecuted for possession of the drugs seized on this occasion — the alleged offense that forms the basis of the City's complaint.
On April 23, 1996, the City of Gadsden commenced this action in the Etowah Circuit Court, seeking the "condemnation and forfeiture" of the subject property, "in accordance with Section20-2-93, Code of Alabama, 1975." On April 17, 1997, Stedham moved to dismiss the complaint "on the ground that the City lacked statutory *Page 1027 
authority" to commence this action. On July 24, 1997, the attorney general appointed the assistant city attorney to serve as a "Deputy Attorney General . . . to represent the interests of the State of Alabama and the City of Gadsden." On July 30, 1997, the City and the State jointly moved the trial court to "amend the complaint in this cause to add the State of Alabama as a party plaintiff." The trial court granted that motion.
However, on December 30, 1997, the trial court dismissed this action, stating: "The City of Gadsden, a Municipality, has no authority to file a condemnation and forfeiture action as such authority is granted only to the State pursuant to Alabama Code [1975,] Sections 20-2-93 and 28-4-286 through 28-4-290." The City and the State appealed.
The appellants begin their argument by conceding that the City "does not have statutory authority to initiate a drug relatedcondemnation action under § 20-2-93," because, they admit, §20-2-93 "incorporate[s] procedures set out in § 28-4-286, et seq., which specify that such an action is to be filed in the name ofthe State." Brief of Appellants, at 8 (emphasis added). Those sections provide in pertinent part:
§ 20-2-93:
"(a) The following are subject to forfeiture:
". . . .
 "(8) All real property or fixtures used or intended to be used for the manufacture, cultivation, growth, receipt, storage, handling, distribution, or sale of any controlled substance in violation of any law of this state.
". . . .
 "(h) . . . Except as specifically provided to the contrary in this section, the procedures for the condemnation and forfeiture of property seized under this section shall be governed by and shall conform to the procedures set out in Sections 28-4-286 through 28-4-290. . . ."
§ 28-4-286:
 "It shall be the duty of [the district attorney] in the county or the Attorney General of the state to institute at once or cause to be instituted condemnation proceedings in the circuit court by filing a complaint in the name of the state against the property seized. . . ."
The City and the State, however, contend that the amended complaint filed on July 30, 1997, added the State as the "real party in interest," within the meaning of Ala.R.Civ.P. 17. Consequently, they argue, any defect in the original complaint was cured by the amendment, which they insist, "relates back," pursuant to Ala.R.Civ.P. 15(c), to the date the original complaint was filed. Although they essentially concede that the City was not the real party in interest, their reliance on Rules 15(c) and 17(a) is misplaced, because this case turns not on the identity of the real party in interest, but on whether the City had standing to commence the action in the first instance.
There are fundamental differences between the principles of "real party in interest" and "standing." "`[T]he real party in interest principle is a means to identify the person who possesses the right sought to be enforced. Therefore, the term directs attention to whether [the] plaintiff has a significant interest in the particular action he has instituted.'" Dennis v. Magic CityDodge, Inc., 524 So.2d 616, 618 (Ala. 1988) (quoting 6 C. Wright A. Miller, Federal Practice and Procedure § 1542 (1971)).
Standing, on the other hand, turns on "whether the party has been injured in fact and whether the injury is to a legallyprotected right." Romer v. Board of County Comm'rs of the Countyof Pueblo, 956 P.2d 566, 581 (Colo. 1998) (Kourlis, J., dissenting) (emphasis added). See also *Page 1028 NAACP v. Town of East Haven, 892 F. Supp. 46 (D.Conn. 1995). "One has standing to bring his complaint into court `if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case.'" Smith v.Potts, 293 Ala. 419, 422, 304 So.2d 578,580 (1974) (emphasis added).
The City suffered no injury to a "legally protected right," because, given the provisions of § 20-2-93 and § 28-4-286, it had no legal right to prosecute or to begin this action. A fortiori, it could not "vigorously" prosecute it. In fact, the City wasstatutorily barred from commencing or prosecuting this action; therefore, it had no "stake in the resolution of [the] complaint."Smith v. Potts, supra.
When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction. Barshopv. Medina County Underground Water Conservation District,925 S.W.2d 618, 626 (Tex. 1996) ("Standing is a necessary component of subject matter jurisdiction"). See also Raines v. Byrd,521 U.S. 811 (1997); Lewis v. Casey, 518 U.S. 343 (1996); United States v.Hays, 515 U.S. 737, 742 (1995) ("`standing "is perhaps the most important of [the jurisdictional] doctrines"'"); NationalOrganization for Women, Inc., v. Scheidler, 510 U.S. 249, 255
(1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation."); Romerv. Board of County Comm'rs of the County of Pueblo, supra, 956 P.2d at 585 ("standing is a jurisdictional prerequisite to every case and may be raised at any stage of the proceedings") (Martinez, J., dissenting); Cotton v. Steele, 255 Neb. 892,587 N.W.2d 693 (1999). But see Hertzberg v. Zoning Bd. of Adjustmentof the City of Pittsburgh, 554 Pa. 249, 721 A.2d 43 (1998) (standing is not jurisdictional).
Because "[t]he lack of standing [is] a jurisdictional defect," the defect "cannot be cured nunc pro tunc back to the date when the original complaint was filed." Tyler HouseApartments, Ltd., v. United States, 38 Fed.Cl. 1, 7 (Fed.Cl. 1997). In other words, a pleading purporting to amend a complaint, which complaint was filed by a party without standing, cannot relate back to the filing of the original complaint, because there is nothing "back" to which to relate. See GaiaTechs., Inc. v. Reconversion Techs., Inc., 93 F.3d 774, 779 (Fed. Cir. 1996) (assignment to Gaia Technologies, Inc., of patent and trademark rights purporting to operate nunc pro tunc to a date "prior to Gaia's filing of the . . . suit" was ineffective to cure the jurisdictional defect created by Gaia's lack of standing on the date of commencement of the action), amended on rehearing onother grounds, 104 F.3d 1298 (Fed. Cir. 1996); Reynolds v.United States, 748 F.2d 291, 292 (5th Cir. 1984) (a complaint filed pursuant to the Federal Tort Claims Act ("FTC") before the "final denial" of the plaintiff's claim by the "appropriate Federal agency" as required by the FTC was due to be dismissed for lack of subject-matter jurisdiction, and an amended complaint filed after the "final denial" was also due to be dismissed because it could relate back only to a date on which the trial court lacked subject-matter jurisdiction).
Because the City had no standing to commence or prosecute this action, the complaint it filed on April 23, 1996, failed to invest the trial court with subject-matter jurisdiction. Therefore, the purported amendment filed on July 30, 1997, could relate back only to a time when the trial court had no jurisdiction. The trial court's order of December 30, 1997, dismissing this action was correct.[1] *Page 1029 
This case is clearly distinguishable from Ogle v. Gordon,706 So.2d 707 (Ala. 1997). That case arose out of an automobile accident resulting in the death of Margaret Ogle. Id. at 708. On September 30, 1992, approximately four months after the accident, Anthony Ogle (1) petitioned the probate court, pursuant to Ala. Code 1975, § 43-2-42, for letters of administration for the estate of his wife; and (2) commenced an action pursuant to the Wrongful Death Act, Ala. Code 1975, § 6-5-410, which requires that such an action be commenced by the "personal representative" within two years of the death on which the action is based. 706 So.2d at 708. While the action remained pending in the circuit court, the probate court failed to issue the letters of administration until more than two years after the accident.
On the bases of Ala. Code 1975, § 43-2-831 and § 43-2-42, this Court held that the letters of administration related back to September 30, 1992, the date of the filing of the complaint. Specifically, we noted that § 43-2-831 expressly provides that "[t]he powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter" (emphasis added); and we noted that §43-2-42 provides that, under the facts of Ogle, "[a]dministration of [the] intestate's estate must be granted to" the husband, if he is "willing to accept and [is] satisfactory to serve." 706 So.2d at 710. We explained that "a probate court has no discretion in matters concerning appointment, except as to matters of qualification." 706 So.2d at 710.
The differences between this present case and Ogle are fundamental and statutory. Whereas Anthony Ogle was statutorily designated as the proper person to commence the action in his office of personal representative, to which he was statutorily entitled, in this case the City is statutorily excluded as a litigant. By statute, the City could never commence this action. The result is the same as if a private citizen — rather than the City — had attempted to initiate the action.
Because the City had no standing, the trial court had no subject-matter jurisdiction, and, consequently, no alternative but to dismiss the action. See Beach v. Director of Revenue,934 S.W.2d 315, 318 (Mo.Ct.App. 1996) ("Lacking subject matter jurisdiction [a court] may take no action other than to exercise its power to dismiss the action. . . . Any other action taken by a court lacking subject matter jurisdiction is null and void."). The judgment of the trial court is, therefore, affirmed.
AFFIRMED.
Hooper, C.J., and Houston, Kennedy, See, and Johnstone, JJ., concur.
Lyons, J., concurs in the result.
Maddox and Brown, JJ., dissent.
[1] See also 6A C. Wright, A. Miller M. Kane, Federal Practiceand Procedure § 1542, at 333 (1990) ("objections to standing, unlike Rule 17(a) objections, cannot be waived"). The United States Supreme Court has explained the rationale for carefully distinguishing between such concepts as standing and real party in interest, as follows:
 "The distinction between subject-matter jurisdiction and waivable defenses is not a mere nicety of legal metaphysics. It rests instead on the central principle of a free society that courts have finite bounds of authority, some of constitutional origin, which exist to protect citizens from the very wrong asserted here, the excessive use of judicial power. The courts, no less than the political branches of the government, must respect the limits of their authority."
United States Catholic Conference v. Abortion Rights Mobilization,Inc., 487 U.S. 72, 77 (1988).