George Dunning, Gerald Salter, and Dennis Coleman appeal from the summary judgment entered in favor of Metropolitan Life Insurance Company, New England Life Insurance Company, and Spencer M. Tatum d/b/a Tatum Associates.[1] They argue that their fraud and breach-of-contract claims are ripe for adjudication, and that, therefore, the summary judgment entered against them was improper. We vacate the judgment of the trial court and dismiss the appeal.
 I.
In 1985 and 1992, Hammer, Inc., a construction company located in Monroeville, entered into "supplemental income agreements" with three key employees, George Dunning, Gerald Salter, and Dennis Coleman.[2] The agreements provide retirement *Page 94 
and/or death benefits for each of the employees. Hammer was solely responsible for funding the promised benefits. The employees received the benefits if they remained employed by the company through the retirement date specified in the agreements or died while employed by the company.
Hammer purchased a life insurance policy on each of the three employees to fund its anticipated obligations under the supplemental income agreements. Hammer purchased the insurance from New England Mutual Life Insurance Company ("New England Mutual") through its agent, Spencer Tatum d/b/a Tatum 
Associates.[3] Hammer — not the employees — was the owner and beneficiary of the life insurance policies. Article 7 of each of the supplemental income agreements specifically permitted this type of funding arrangement:
 "7.01 Funding. [Hammer] reserves the absolute right at its sole and exclusive discretion either to fund the obligations of [Hammer] undertaken by this agreement or to refrain from funding the same, and to determine the extent, nature, and method of such funding. Should [Hammer] elect to fund this Agreement, in whole or in part, through the medium of life insurance or annuities, or both, [Hammer] shall be the owner and beneficiary of the policy. [Hammer] reserves the absolute right, in its sole discretion, to terminate such life insurance or annuities, as well as any other funding program, at any time, either in whole or in part. At no time shall the Employee be deemed to have any right, title, or interest in or to any specified asset or assets of [Hammer], including, but by no way of restriction, any insurance or annuity contract or contracts or the proceeds therefrom.
 "Any such policy shall not in any way be considered to be security of the performance of the obligations of this Agreement. It shall be, and remain, a general, unpledged, unrestricted asset of [Hammer]."
Hammer receives annual statements from New England Mutual showing the value of each policy. Since 1991, the value of each policy has been lower than anticipated and the policies would not fund Hammer's obligations to its employees under the supplemental income agreements. Hammer is aware of the under-performance of the life insurance policies and acknowledges that it is still obligated to honor the agreements with its employees. Hammer, however, has no current obligation under the agreements because none of the employees' benefits has vested, that is, none of the employees has retired or died.
After learning that the life insurance policies were not performing at a level that would fully fund their promised benefits, the employees sued Hammer, Tatum, New England Life Insurance Company, and Metropolitan Life Insurance Company (hereinafter we refer to New England Life Insurance Company and Metropolitan Life Insurance Company collectively as "New England"),[4] alleging fraud, suppression, and breach of contract. New England and *Page 95 
Tatum moved for a summary judgment, arguing that the employees' claims are not ripe for adjudication, or, alternatively, that their claims are barred by the statute of limitations or are preempted under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"). On May 6, 2002, the trial court entered a summary judgment in favor of New England and Tatum, finding that the employees' claims were not ripe for adjudication. Following the issuance of that order, the employees dismissed their claims against Hammer without prejudice.
On June 17, 2002, Sidney W. Jackson III, counsel for the employees, telephoned Milton Coxwell, Jr., an attorney practicing in Monroeville, and asked him to file with the Monroe Circuit Court clerk a copy of the employees' notice of appeal from the summary judgment for New England and Tatum because, Jackson said, he had no way of getting the notice of appeal to Monroeville that day. Coxwell agreed, and Jackson faxed a copy of the notice of appeal to Coxwell. Coxwell delivered the faxed copy of the notice of appeal to the circuit court clerk. Jackson never forwarded the original notice of appeal to the clerk.
The appeal was docketed in this Court on July 16, 2002. On July 25, 2002, New England and Tatum moved to dismiss the appeal, arguing that the employees failed to file a proper and timely notice of appeal. On October 31, 2002, we granted the motion to dismiss. On November 12, 2002, the employees moved for reconsideration of the dismissal, asking this Court to set aside its October 31, 2002, order of dismissal and to reinstate their appeal. This Court did so; however, we instructed the parties to brief the issue of the effectiveness of facsimile filings together with the substantive issues presented on appeal.
 II.
New England and Tatum argue that the notice of appeal filed on behalf of the employees was improper because it was a faxed copy. New England and Tatum cite Ex parte Tuck, 622 So.2d 929 (Ala. 1993), a case that addresses the propriety of a facsimile filing of a notice of appeal. Tuck faxed to the circuit court a copy of the notice of appeal on the final day of the 14-day period prescribed by § 12-12-70(a), Ala. Code 1975.[5] On the same day, he placed the signed original of the notice of appeal in the mail. The circuit court clerk received the original notice of appeal one day after the expiration of the 14-day appeal period. The appellee moved to dismiss the appeal, arguing that the notice of appeal was filed beyond the 14-day period. The circuit court granted the motion to dismiss, finding that a notice of appeal sent by facsimile is not a "filing" under the Alabama Rules of Civil Procedure.[6] The Court of Civil Appeals reversed the circuit court's judgment of dismissal. McKay v. Tuck,622 So.2d 926, 928 (Ala.Civ.App. 1992). On certiorari review, this Court affirmed the judgment of the Court of Civil Appeals, holding that "no one was misled or prejudiced by the facsimile filing of the notice of appeal." Ex parte Tuck, 622 So.2d at 930. However, this Court *Page 96 
expressly relied on the fact that Tuck mailed an original notice of appeal to the circuit court clerk's office the same day he faxed his notice of appeal and that the circuit clerk's office received the original notice of appeal the next day. Ex parteTuck, 622 So.2d at 930.
This Court limited its holding in Ex parte Tuck to Tuck's appeal and gave notice that, effective August 1, 1993:
 "[The Court] will not recognize facsimile transmissions as filings, within the meaning of our rules of court or the statutes of this state, except as statutes or rules may specifically authorize `filing' by facsimile transmission."
622 So.2d at 930. After Ex parte Tuck was released, the Supreme Court Standing Committee on the Rules of Civil Procedure considered facsimile filing, but recommended that the Alabama Rules of Civil Procedure not be amended to provide for filing by facsimile. See Important Notice from the Clerk of the SupremeCourt of Alabama, following Rule 5, Ala. R. Civ. P.
New England and Tatum argue that the notice of appeal the employees filed in this case was a faxed copy and that, therefore, it was not a permissible filing under Rule 3(a)(1), Ala. R.App. P. The employees reframe the issue, arguing that there is no express requirement in Rule 3(a)(1), Ala. R.App. P., that the notice of appeal filed be an original; they argue that a copy of an original notice of appeal, timely filed, is sufficient to invoke the jurisdiction of an appellate court under Rule 3. We agree.
The employees did not file their notice of appeal by faxing it to an agent of the Monroe Circuit Court clerk. Instead, a local attorney filed a copy of their notice of appeal in person. The copy of the notice of appeal had been produced by a fax machine in the local attorney's office; it had not been transmitted to the clerk's office by fax machine. Therefore, the issue presented in this case is not whether the filing of a notice of appeal by facsimile transmission is permissible; instead, it is whether a timely filed copy of a notice of appeal is acceptable under the Alabama Rules of Appellate Procedure if that copy was produced by a facsimile transmission.
The only jurisdictional prerequisite for an appeal is the timely filing of a notice of appeal. Edmondson v. Blakey,341 So.2d 481, 484 (Ala. 1976); see also Committee Comments to Rule 3, Ala. R.App. P. ("Timely filing of the notice of appeal is a jurisdictional act. It is the only step in the appellate process which is jurisdictional."). The Alabama Rules of Appellate Procedure were not "designed to catch the unwary on technicalities." Edmondson, 341 So.2d at 484. Accordingly, absent a showing that the alleged defect in a notice of appeal prejudiced the adverse party, an appeal will not be dismissed on the basis of that defect. See Wemett v. State, 536 So.2d 349,350 (Fla.Dist.Ct.App. 1988) ("a defect in a notice of appeal that does not prejudice the adverse party will not serve as grounds for dismissal").
The only difference between an original notice of appeal and a copy is the absence of an original signature on the copy. Neither the Alabama Rules of Appellate Procedure nor the Alabama Rules of Civil Procedure requires that a notice of appeal bear an original, penned signature.[7]
 "`"In the absence of a statute prescribing the method of affixing a signature, *Page 97 
it may be affixed in many different ways. It may be written by hand, and, generally, in the absence of a statute otherwise providing, it may be printed, stamped, typewritten, engraved, photographed or cut from one instrument and attached to another."'"
Wemett, 536 So.2d at 351 (quoting State v. Hickman,189 So.2d 254, 258 (Fla.Dist.Ct.App. 1966), quoting in turn, 80 C.J.S.Signatures § 7 (1953)).
We hold that a timely filed copy of an original notice of appeal is acceptable under the Alabama Rules of Appellate Procedure. Thus, the employees' notice of appeal, which was a faxed copy, was timely filed.
 III.
On appeal, the employees state that the summary judgment for New England and Tatum was improper because, they argue, their claims are ripe for adjudication. We hold that the employees lacked standing to sue on the alleged underperformance of the life insurance policies; they are strangers to the contract on which their claims are based.
 "`Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.' National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). `"[L]ack of standing [is] a jurisdictional defect."' State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala. 1999) (quoting Tyler House Apartments, Ltd. v. United States, 38 Fed. Cl. 1, 7 (Fed.Cl. 1997)). `[J]urisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.' Nunn v. Baker, 518 So.2d 711, 712
(Ala. 1987).''
Ex parte Fort James Operating Co., 871 So.2d 51, 54 (Ala. 2003).
It is well-settled law that "one not a party to, or in privity with a contract, cannot sue for its breach." Twine v. LibertyNat'l Life Ins. Co., 294 Ala. 43, 50, 311 So.2d 299, 305
(1975). In this case, Hammer purchased three life insurance policies from New England Mutual to fund its potential obligations under the supplemental income agreements. Hammer — not the employees — is the owner and direct beneficiary under the policies. Moreover, the employees acknowledged in the supplemental income agreements themselves that they would have no interest in any such insurance policies or the proceeds from the policies.
The record likewise reveals that the employees cannot be considered third-party beneficiaries under the life insurance contracts.
 "A party claiming to be a third-party beneficiary of a contract must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental benefit upon the third party."
Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co.,619 So.2d 1328, 1329 (Ala. 1993). The supplemental income agreements stated that the employees would have no "right, title or interest" in any insurance purchased by Hammer. Therefore, we cannot conclude that Hammer intended to bestow a direct benefit upon the employees when it purchased the life insurance policies from New England Mutual.
As strangers to the contracts entered into between New England Mutual and Hammer, the employees have no standing to complain about an alleged breach of those contracts. Similarly, the employees have no standing to complain about the alleged fraudulent behavior in connection with the execution of the contracts on New England Mutual's part. Because the employees *Page 98 
lack standing, the trial court did not have jurisdiction over their claims. See City of Dothan Pers. Bd. v. DeVane,860 So.2d 881, 892 (Ala.Civ.App. 2002) ("`When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.'") (quoting State v. Property at2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala. 1999)). Thus, the judgment is void, and a void judgment will not support an appeal.Id. ("when a party without standing purports to appeal to an appellate court of this state or to file a petition for a writ of certiorari the court must dismiss the appeal or the petition").
 IV.
In view of our holding that the employees lack standing to assert their claims and that the trial court's judgment is void and will not support an appeal, we vacate the trial court's judgment and dismiss the appeal.
JUDGMENT VACATED; APPEAL DISMISSED.
HOUSTON, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] The plaintiffs also named as defendants New England Financial, MetLife, and New England Mutual Life Insurance Company. New England Financial and MetLife are not legal entities, and New England Mutual Life Insurance Company was subsumed by merger with Metropolitan Life Insurance Company. The trial court, noting this, entered a summary judgment against only those parties listed above.
[2] Dunning and Salter entered into supplemental income agreements with Hammer in 1985. Coleman was not employed at Hammer in 1985. In 1992, Coleman began working at Hammer and entered into a supplemental income agreement at that time.
[3] At some point, New England Mutual Life Insurance Company merged with Metropolitan Life Insurance Company and no longer operates as a separate legal entity. In order to avoid confusion, we will continue to use the name "New England Mutual" to identify the insurer.
[4] See note 1.
[5] Tuck was attempting to appeal a decision of the district court to the circuit court for a trial de novo.
[6] The notice of appeal in Tuck was not faxed directly to the circuit court clerk (apparently because the clerk did not have a facsimile machine in that office). Instead, the notice of appeal was faxed to the Talladega County courthouse with a transmittal sheet asking the recipient to deliver the notice of appeal to the clerk's office. McKay v. Tuck, 622 So.2d 926, 928
(Ala.Civ.App. 1992) (Robertson, P.J., concurring in the result).
[7] Rule 11, Ala. R. Civ. P., states that: "Every pleading, motion, or other paper of a party represented by an attorney shall be signed by at least one attorney of record. . . ." It does not prescribe the method by which a pleading or other paper is to be signed.