CRAWLEY, Judge.
On April 3, 2003, the attendance supervisor of the Jefferson County Board of Education filed a verified complaint charging that A.C., a 12-year-old sixth-grade girl, was a child in need of supervision (“CHINS”) because she had been habitually truant, having accumulated 26 unexcused absences and 9 unexcused tardies from school. A.C. entered a plea of “true” to the complaint, and the juvenile court *519 adjudicated her as a CHINS.[1] This appeal is properly before this court pursuant to Rule 28(A)(2), Ala. R. Juv. P. See S.H. v. State, 868 So.2d 1110 (Ala.Civ.App.2003) (Crawley, J., with one Judge concurring and one Judge concurring in the result).
The juvenile court placed A.C. on probation and ordered her to complete the “High Intensity Training” or “H.I.T.” program, a residential boot camp for juveniles administered under the supervision of the Department of Youth Services (“DYS”). The court further directed the “paperwork [for the H.I.T. program] to be held and submitted at the probation officer’s discretion.”
A.C. appeals, arguing that, based on § 12-15-71 (e), Ala.Code 1975, the juvenile court had no authority to order her to attend a juvenile-boot-eamp program. Subsection (e) of § 12-15-71 is one of three subsections that govern the disposition of a CHINS. It provides:
“(e) No child found to be in need of supervision, unless also found to be delinquent, shall be committed to or placed in an institution or facility established for the care and rehabilitation of delinquent children unless the court finds upon a further hearing that the child is not amenable to treatment or rehabilitation under any prior disposition or unless the child is again alleged to be a child in need of supervision and the court, after hearing, so finds.”
A.C. argues that a juvenile-boot-camp program is a “facility established for the care and rehabilitation of delinquent children.” Therefore, she insists, boot camp is not available as a dispositional option for a child who has been adjudicated for the first time as a CHINS and who has not been found, after a hearing, to be “not amenable to treatment or rehabilitation.”
Pursuant to Rule 28(A)(1)(b), Ala. R. Juv. P., and § 12-12-72(2), Ala.Code 1975, the parties stipulated that only questions of law were involved in the appeal, and the juvenile court certified the following:
“Certification of Questions
“When attendance and completion of a boot camp program (High Intensity Training) is ordered as a term of probation for a delinquent juvenile or a child in need of supervision, is that a ‘facility for the care and rehabilitation’ under § 12-15-71(e), Code of Alabama?
“Does a juvenile court judge have the authority to order a child found in need of supervision(CHINS) to complete a juvenile boot camp where such child has never been adjudicated delinquent or found unamenable to treatment or rehabilitation?
“In Jefferson County, female juveniles are in programs which are operated by contract between private agencies and the Alabama Department of Youth Services (ALDYS). For male juveniles, the boot camp program is operated by AL- *520 DYS separately from the ALDYS campus programs.
“Unlike a commitment of a juvenile to the custody of ALDYS, custody of a child ordered to a boot camp program remains with the parent or guardian.
“Answer to Questions
“This court believes that requiring a juvenile, either delinquent or a child in need of supervision, to complete a boot camp program as a term of probation is not a commitment to a facility described in Section 12-15-71(e), which section envisions facilities operated by state agencies such as the Alabama Department of Youth Services.”
(Emphasis in original.)
For a more complete understanding of the dispositional options open to the juvenile court in a CHINS case, we quote a rather lengthy portion of the juvenile-procedure statutes, specifically various subsections of § 12-15-71, Ala.Code 1975, highlighting at the end, the provision at issue in this case:
“(c) If a child is found to be delinquent or in need of supervision, the court may make any of the following orders or dispositions for the child’s supervision, care, and rehabilitation:
“(1) Permit the child to remain with the parents, guardian, or other custodian of the child, subject to the conditions and limitations the court may prescribe;
“(2) Place the child on probation under conditions and limitations the court may prescribe;
“(3) Transfer legal custody to any of the following:
“a. The Department of Youth Services, with or without a commitment order to a specific institution.
“b. In the case of a child in need of supervision, the Department of Youth Services, or the Department of Human Resources.
“c. A local, public, or private agency, organization, or facility willing and able to assume the education, care, and maintenance of the child and which is licensed or otherwise authorized by law to receive and provide care for children.
“d. A relative or other individual who, after study by the probation services, is found by the court to be qualified to receive and care for the child.
“(4) Make any other order as the court in its discretion shall deem to be for the welfare and best interests of the child....
“(5) Direct the parent or custodian of the child to perform such reasonable acts as are deemed necessary to promote the best interest of the child.
[[Image here]]
“(d) No child by virtue of a disposition under this section shall be committed or transferred to a penal institution or other facility used for the execution of sentences of persons convicted of a crime.
“(e) No child found to be in need of supervision, unless also found to be delinquent, shall be committed to or placed in an institution or facility established for the care and rehabilitation of delinquent children unless the court finds upon a further hearing that the child is not amenable to treatment or rehabilitation under any prior disposition or unless the child is again alleged to be a child in need of supervision and the court, after hearing, so finds.”
(Emphasis added.)
I.
Initially, the State contends that A.C. does not have standing to raise the issue of *521 the juvenile court’s authority to order her to complete the H.I.T. program boot camp because, it argues, A.C. has not yet been— and may never be — required to enter the boot camp. The State points out that A.C.’s entry into the H.I.T. program is at the discretion of her probation officer, and it argues that, because A.C. has not entered the program, she has not suffered an injury in fact.
In State v. Property at 2018 Rainbow Drive, 740 So.2d 1025 (Ala.1999), our supreme court explained the concept of standing:
“Standing. ... turns on ‘whether the party has been injured in fact and whether the injury is to a legally protected right’ Romer v. Board of County Comm’rs of the County of Pueblo, 956 P.2d 566, 581 (Colo.1998) (Kourlis, J., dissentingXemphasis added [in Property at 2018 Rainbow Drive ]). See also NAACP v. Town of East Haven, 892 F.Supp. 46 (D.Conn.1995). ‘One has standing to bring his complaint into court “if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case.” ’ Smith v. Potts, 293 Ala. 419, 422, 304 So.2d 578, 580 (1974) (emphasis added [in Property at 2018 Rainbow Drive ]).”
740 So.2d at 1027-28.
It is undisputed that A.C. has been adjudicated as a CHINS only once. It is also undisputed that the juvenile court did not find, after a hearing, that A.C. was “not amenable to treatment or rehabilitation under any prior disposition.” § 12-15-71(e). Therefore, A.C. has a legally protected right not to be “committed to or placed in an institution or facility established for the care and rehabilitation of delinquent children.” Id. If the H.I.T. program boot camp is such a facility, then AC.’s being ordered by the juvenile court to complete that program is a violation of “a legally protected right,” notwithstanding the fact that the juvenile court’s order was, in effect, suspended and A.C. was put on probation. See Ex parte Shelton, 851 So.2d 96 (Ala.2000), affirmed, Alabama v. Shelton, 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002).
In Ex parte Shelton, the Alabama Supreme Court was called on to decide whether a criminal defendant who had been convicted of a misdemeanor and sentenced to 30 days’ imprisonment, but whose sentence was suspended and who was placed on probation, had the constitutional right to appointed counsel under the Sixth Amendment. The court observed that neither Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), nor Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) — both of which held that no person may be sentenced to a term of imprisonment, even for a misdemeanor offense, unless he was represented by counsel at trial — answered the question whether a suspended or probated sentence constitutes a “term of imprisonment.” Noting a split of authority among jurisdictions that had considered the issue, our supreme court principally relied on the decision of the United States Court of Appeals for the Tenth Circuit in United States v. Reilley, 948 F.2d 648 (10th Cir. 1991). In Reilley, the court stated:
“If a defendant cannot be ordered to serve a sentence of imprisonment, it seems obvious that a conditional sentence of imprisonment is equally invalid. Since the court’s conditional threat to imprison Reilley could never be carried out, the threat itself is hollow and should be considered a nullity.”
948 F.2d at 654. In Ex parte Shelton, our supreme court held that the defendant “was entitled to representation by counsel because he was sentenced to a term of *522 imprisonment, albeit suspended.” 851 So.2d at 101. The United States Supreme Court affirmed the holding of the Alabama Supreme Court, noting that the Alabama Supreme Court had held that “a suspended sentence constitutes a ‘term of imprisonment’ within the meaning of Argersinger and Scott even though incarceration is not immediate or inevitable.” Alabama v. Shelton, 535 U.S. at 659, 122 S.Ct. 1764 (emphasis added). The.United States Supreme Court concluded that “[a] suspended sentence is a prison term imposed for the offense of conviction. Once the prison term is triggered, the defendant is incarcerated not for the probation violation, but for the underlying offense.” Id. at 662, 122 S.Ct. 1764.
Based on the reasoning employed by our supreme court Ex parte Shelton and by the United States Supreme Court in Alabama v. Shelton, we hold that A.C. has standing to contest her disposition by the juvenile court, even though that disposition was, in effect, “suspended.” If A.C. suffered an injury to her legally protected right not to be “committed to or placed in an institution or facility established for the care and rehabilitation of delinquent children,” § 12-15-71(e), then the injury occurred when the disposition was pronounced and it does not have to await vindication until the disposition is carried out.
II.
The State argues that there is nothing in the record to indicate that, even if she were sent to the H.I.T. program boot camp, she would be entering a “facility established for the care and rehabilitation of delinquent children.” § 12-15-71(e). The State maintains that A.C. had the burden of establishing that attending the boot camp would necessarily place her with children who had been adjudicated delinquent.
We find the State’s second argument, which raises an issue of fact, to be somewhat disingenuous in light of the fact that this appeal is before us because the parties stipulated that only questions of law were involved and the juvenile court certified the questions. The juvenile court’s certification of the questions and its “answer” to the questions assumes that a juvenile boot camp is a “facility established for the care and rehabilitation of delinquent children.” § 12-15-71(e). Alabama statutes and appellate court opinions reciting delinquency dispositions bear out that assumption. See, e.g., § 12-15-71(k), Ala.Code 1975 (providing for placement of a juvenile in an alternative school “[w]hen the court finds a juvenile to be delinquent and commits the juvenile to a juvenile detention facility, boot camp, or to [DYS], but the juvenile detention facility, boot camp, or [DYS] is unable to take the juvenile due to a lack of space”); D.K.T. v. State, 886 So.2d 175 (Ala.Crim.App.2003) (stating that the juvenile was adjudicated dehnquent, committed to the custody of DYS and “ordered ... detained until accepted into a boot camp program”); C.M. v. State, 855 So.2d 582, 585 (Ala.Crim.App.2002) (quoting a juvenile court’s statement declining to appoint counsel for a juvenile charged with delinquency: “I’m going to state for the record that if your son were found guilty of the charges ... I would not be committing him to an institution in which his freedom is curtailed. At most, he would be placed on probation and ordered to pay a fine. There would not be any sort of commitment to any juvenile detention facility or any juvenile facility, such as the HIT program or [DYS]”).
■ In attempting to justify its disposition of A:C., the -juvenile court did not state or imply that the H.I.T. program boot camp *523 is not a “facility established for the care and rehabilitation of delinquent children.” § 12-15-71(e). Instead, the juvenile court reasoned that its disposition of A.C. did not violate § 12 — 15—71(e) for three other reasons. Those reasons were (1) that ordering A.C. to attend and complete the H.I.T. program boot camp was a mere “term of probation”; (2) that female juveniles in Jefferson County are sent to boot camps operated by private agencies that contract with DYS; and (3) that A.C. remained in parental custody and was not committed to the custody of DYS.
We have already answered the argument that A.C.’s rights under § 12-15-71(e) were not violated because the juvenile court’s disposition imposed a mere “term of probation” or “suspended sentence.” Our resolution of the standing question necessarily concluded that a “probationary term” granting A.C.’s probation officer the discretion to determine whether she should be sent to the H.I.T. program boot camp is the equivalent of “placement in” the boot camp.
The distinction drawn by the juvenile court between privately run juvenile facilities for females and DYS-run facilities for males does not negate the operation of § 12 — 15—71(e). That statutory provision prohibits the placement of a CHINS in a “facility established for the care and rehabilitation of delinquent children” and has nothing to do with whether the facility is operated by DYS or by an independent contractor.
It is also immaterial, for purposes of compliance with § 12 — 15—71(e), whether a CHINS remains in parental custody or has been committed to the custody of DYS. Compare § 12-15-71(c)(l)(authoriz-ing a CHINS to remain in parental custody, subject to court-ordered conditions and limitations) with § 12-15-71(c)(3)a.-d.(au-thorizing the legal custody of a CHINS to be transferred to DYS, to the Department of Human Resources, to public or private agencies, or to a relative or other individual). Section 12-15-71(e) clearly prohibits not only the commitment of a CHINS to a facility established for delinquents, but also the placement of a CHINS in such a facility. The operative part of the statute, for purposes of this appeal, is the prohibition against placing a CHINS at a facility established for delinquents. Based on the parties’ stipulations, the assumptions underlying the juvenile court’s certification, and the statutory and caselaw references indicating that a juvenile boot camp is a “facility established for the care and rehabilitation of delinquent children,” we hold that the portion of the juvenile court’s disposition order requiring A.C. to attend and complete the H.I.T. program boot camp must be stricken.
The judgment of the juvenile court is therefore reversed, and the cause is remanded for compliance with the principles expressed in this opinion.
REVERSED AND REMANDED.
THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
YATES, P.J., dissents, with writing.

. The juvenile court’s judgment of June 24, 2002, actually found that A.C. was a delinquent child, not a CHINS. On August 1, 2003, however, the court corrected its judgment as follows:
“On this court's own motion, [the] finding of delinquency in this case [was] entered in error and [the] finding of the court is corrected to reflect that the child should have been found to be a child in need of supervision.”
The fact that the trial court corrected its judgment more than 14 days after it originally entered the judgment does not render the corrected judgment invalid. Rule 60(a), Ala. R. Civ. P., provides that "[cjlerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.”