THOMAS, Judge.
 

 Larry Proctor appeals from a summary judgment in favor of Classic Automotive, Inc. (“Classic”), on various claims arising from a transaction in which Proctor’s wife, Rhonda, traded-in a 2002 Pontiac Bonneville automobile (“the Bonneville”) and leased a 2006 Cadillac STS automobile (“the Cadillac”) from Classic. Proctor alleged in his complaint that Rhonda lacked the mental capacity to enter into the automobile lease agreement with Classic and sought damages for invasion of privacy, negligence, wantonness, and fraud. Proctor also sought to have the automobile lease agreement set aside. Classic moved for a summary judgment, which Proctor opposed. Proctor did, however, voluntarily dismiss his invasion-of-privacy claim. The trial court entered a summary judgment in favor of Classic on all remaining claims. Proctor appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
 

 We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see
 
 Lee v. City of Gadsden,
 
 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ”
 
 Lee,
 
 592 So.2d at 1038 (footnote omitted). “[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989);
 
 see
 
 Ala.Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw.
 
 See Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C.,
 
 792 So.2d 369, 372 (Ala.2000); and
 
 Fuqua v. Ingersoll-Rand Co.,
 
 591 So.2d 486, 487 (Ala.1991). ’
 

 Proctor sought a judgment declaring that the automobile lease agreement that Rhonda had executed was void on the ground that she lacked mental capacity. The evidence of Rhonda’s mental capacity is undisputed. She has been diagnosed with depression, manic depression, and bipolar disorder, but she has not been declared incompetent. Rhonda receives $516 per month in disability benefits based on her diagnoses of Crohn’s disease, bipolar disorder, and manic depression.
 

 On the day she entered the automobile lease agreement, Rhonda left her home wearing no makeup and without fixing her ham, both of which were unusual for her. However, Rhonda had searched the Internet for automobiles before she left the house that day, and she had already decided to go to Classic to look at a particular automobile. When she arrived at Classic that day, she decided against the automobile she had selected on the Internet, but
 
 *1285
 
 she inquired about the Cadillac she had noticed on the lot. Rhonda did not test drive the Cadillac.
 

 Although Rhonda testified in her deposition that she merely had inquired about the price of the Cadillac, and that she had disputed with the salesman whether she could afford the lease payments, she admitted that she had signed the automobile lease agreement and had driven the Cadillac home. During the negotiations, Rhonda was asked for the keys to the Bonneville. When Rhonda had difficulty removing them from the key ring, one of the salesman offered to help her, but she refused his assistance and removed the keys herself. During the nearly two hours Rhonda was at the dealership executing the automobile lease agreement, she also used the term “buying” instead of the term “leasing” when describing the transaction.
 

 Rhonda did testify that, in the days either immediately preceding or immediately following her signing the automobile lease agreement, she had also gone on a “shopping spree,” during which she had maxed out a credit card. In the days following her execution of the automobile lease agreement, Rhonda became increasingly upset. Rhonda even said that she had considered attempting suicide by overdose a few days after executing the automobile lease agreement.
 

 Proctor argues that Rhonda’s mental-health diagnoses and her behavior on the day she executed the automobile lease agreement are sufficient to indicate that she was not capable of executing the automobile lease agreement because of mental incapacity. As he puts it, Rhonda’s failure to test drive the Cadillac, her agreeing to lease payments that are nearly equal to her monthly disability check, and her making statements indicating that she was “buying” and not leasing the Cadillac are “not the actions of a mentally competent car buyer.” Proctor also comments that Rhonda’s appearance on that date and her difficulty removing the keys from her key ring signify that she was not mentally competent to execute the automobile lease agreement. Proctor relies on the rule that a contract executed by an insane person is void.
 
 Williamson v. Matthews,
 
 379 So.2d 1245, 1247 (Ala.1980). Generally,
 

 “a party cannot avoid, free from fraud or undue influence, a contract on the ground of mental incapacity, unless it be shown that the incapacity was of such a character that, at the time of execution, the person had no reasonable perception or understanding of the nature and terms of the contract.”
 

 Williamson,
 
 379 So.2d at 1247.
 

 According to Classic, the evidence concerning Rhonda’s mental condition and status on the day she executed the automobile lease agreement is insufficient to prove that she lacked capacity. Classic argues that the evidence falls far short of demonstrating a genuine issue of material fact as to whether Rhonda lacked the mental acuity to understand that she was executing the automobile lease agreement. Even given Rhonda’s disheveled appearance, her difficulty in removing her keys from her key ring, her failure to drive the Cadillac before purchasing it, and her comments that she was buying the car instead of using the term “lease,” Classic says, the evidence fails to demonstrate a fact question regarding whether Rhonda lacked the requisite mental capacity.
 

 As Classic argues, “ ‘mere mental weakness falling short of incapacity to appreciate the business in hand will not in
 
 *1286
 
 validate a contract, nor will mere mental weakness or unsoundness to some degree
 
 Lloyd v. Jordan,
 
 544 So.2d 957, 959 (Ala.1989) (quoting 17 C.J.S.
 
 Contracts
 
 § 133(1) (1963)). The question is whether, regardless of illness or infirmity, “‘sufficient intelligence remains to understand the transaction.’ ”
 
 Lloyd,
 
 544 So.2d at 959 (quoting 17 C.J.S.
 
 Contracts
 
 § 133(1) (1963)). Rhonda admitted that she knew she was signing an automobile lease agreement and that she informed Proctor that she had signed a “Smart Lease” when she drove the Cadillac home. Although Rhonda said that she told the salesman that she could not afford the lease payments, she nevertheless signed the automobile lease agreement and drove the Cadillac home. Even if, as Proctor argues, Rhonda was suffering a manic episode that day, none of the evidence suggests that she did not know and understand that she was executing an automobile lease agreement. We therefore affirm the summary judgment in favor of Classic on Proctor’s claim seeking to have the automobile lease agreement set aside.
 

 On appeal, Classic asserts that the trial court properly entered a summary judgment in its favor on all the claims because, it asserts, Proctor was not the real party in interest, as required by Rule 17(a), Ala. R. Civ. P. That rule reads:
 

 “(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person’s own name without joining the party for whose benefit the action is brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.”
 

 Rule 17(a). Classic asserted that Proctor was not the real party in interest in its June 19, 2008, reply to Proctor’s response in opposition to its summary-judgment motion. We note that, on the same date the trial court entered the summary judgment, Proctor moved to amend his complaint to add Rhonda as a plaintiff; the trial court denied his motion. If, in fact, the trial court entered the summary judgment in favor of Classic because it determined that Proctor was not the real party in interest, it would have erred if it had entered a summary judgment on this basis without first permitting Proctor a chance to amend his complaint to add Rhonda as a plaintiff, as the rule requires.
 

 However, we need not decide this case by determining whether Proctor is the real party in interest under Rule 17(a). Instead, we note that Proctor, insofar as he asserts claims of negligence and wantonness, bases his claims on injury to
 
 Rhonda’s
 
 rights and not his own. He does not have standing to assert injury to Rhonda, a third party to the action.
 
 Murphy v. Green,
 
 794 So.2d 325, 331 (Ala.2000).
 

 “To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury.
 
 Albert v. Hsu,
 
 602 So.2d 895, 897 (Ala.1992).”
 
 Martin v. Arnold,
 
 643
 
 *1287
 
 So.2d 564, 567 (Ala.1994). Further, “ ‘[t]he absence of any one of these [elements] renders ... the evidence insufficient [to establish negligence].’ ”
 
 Franklin v. City of Athens,
 
 938 So.2d 950, 953 (Ala.Civ.App.2005) (quoting
 
 Calvert Fire Ins. Co. v. Green,
 
 278 Ala. 673, 677, 180 So.2d 269, 273 (1965)). Whether a legal duty exists is a question of law.
 
 Rose v. Miller & Co.,
 
 432 So.2d 1237, 1238 (Ala.1983). “To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains.”
 
 Martin,
 
 643 So.2d at 567.
 

 Proctor bases his negligence and wantonness claims on Classic’s actions in failing to notice Rhonda’s alleged incapacity and in convincing her to enter into the automobile lease agreement. According to Proctor, Classic owed
 
 him
 
 a duty under the Adult Protective Services Act of 1976 (“the Act”), codified at Ala.Code 1975, 38-9-1 et seq., part of which makes it a criminal offense to “abuse, neglect, exploit, or emotionally abuse” a person protected under the Act. Ala.Code 1975, § 38-9-7(a).
 
 [1]
 
 The term “exploitation” is defined in the Act as “[t]he expenditure, diminution, or use of the property, assets, or resources of a protected person without the express voluntary consent of that person or his or her legally authorized representative .... ” Ala.Code 1975, § 38-9-2(8).
 

 Proctor relies on the doctrine of negligence per se.
 

 “Violation of statutes or ordinances may be negligence.
 
 Vines v. Plantation Motor Lodge,
 
 336 So.2d 1338 (Ala.1976). If the statute or ordinance violated was enacted or promulgated for the protection of the person claiming to have been injured by reason of the violation, the violation of the statute may be negligence per se or negligence as a matter of law.
 
 Allman v. Beam,
 
 272 Ala. 110, 130 So.2d 194 (1961).”
 

 Keeton v. Fayette County,
 
 558 So.2d 884, 887 (Ala.1989). However, Proctor is not within the class of persons the Act was designed to protect. The Act protects persons
 

 “over 18 years of age subject to protection under this chapter or any person, including, but not limited to, persons who are senile, mentally ill, developmentally disabled, or mentally retarded, or any person over 18 years of age that is mentally or physically incapable of adequately caring for himself or herself and his or her interests without serious consequences to himself or herself or others.”
 

 Ala.Code 1975, § 38-9-2(17). Based on Proctor’s arguments and factual assertions,
 
 Rhonda
 
 could possibly be a protected person under the Act. Thus, Proctor is
 
 *1288
 
 not asserting negligence based on a duty owed to
 
 him
 
 but, instead, on a duty allegedly owed to Rhonda. Likewise, Proctor’s wantonness claim is based on Classic’s alleged reckless disregard of Proctor’s rights based, again, on Classic’s failure to realize that Rhonda was experiencing a manic episode and was allegedly incompetent to execute the automobile lease agreement. Proctor does not identify what wrongful act causing
 
 him
 
 damage Classic intentionally undertook or what known duty to
 
 him
 
 Classic omitted.
 

 “A party must allege an individual or representative right and a redressable injury to that right as a prerequisite to setting in motion the machinery of the court. See 59 Am.Jur.2d
 
 Parties
 
 § 31 (1987). In order to be a ‘proper party plaintiff, a person must have an interest in the right to be protected.’
 
 Eagerton v. Williams,
 
 433 So.2d 436, 447 (Ala.1983). As a general rule, ‘a litigant may not claim standing to assert the rights of a third party.’
 
 Jersey Shore Medical Center-Fitkin Hosp. v. Estate of Baum,
 
 84 N.J. 137, 417 A.2d 1003 (1980). A party lacks standing to invoke the power of the court in his behalf in the absence of ‘a concrete stake in the outcome of the court’s decision.’
 
 Brown Mechanical Contractors, Inc. v. Centennial Ins. Co.,
 
 431 So.2d 932, 937 (Ala.1983).”
 

 Ex parte Izundu,
 
 568 So.2d 771, 772-73 (Ala.1990). Even more recently, our supreme court has noted that “a litigant cannot claim standing to assert the rights of a third party not named in the action.”
 
 Murphy v. Green,
 
 794 So.2d 325, 331 (Ala.2000) (citing
 
 Ex parte Izundu,
 
 568 So.2d at 772).
 

 As we explained in
 
 Langham v. Wampol,
 
 902 So.2d 58, 62 (Ala.Civ.App. 2004):
 

 “ ‘The United States Supreme Court has established that the question of standing turns upon whether the litigant is entitled to have the court decide the merits of the dispute.
 
 Warth v. Seldin,
 
 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Standing impai-ts justiciability to the issues raised and is the threshold issue of every federal ease.
 
 Warth.
 
 Likewise, in cases brought in state court, the machinery of the court is not set into motion unless the plaintiff first alleges his right to bring suit to recover for a redressable injury.
 
 Ex parte Izundu,
 
 568 So.2d 771 (Ala.1990). From these rules of law, it is axiomatic that a party who lacks standing cannot be granted relief upon his cause.’
 

 “Cassady v. Claiborne,
 
 590 So.2d 339, 341 (Ala.Civ.App.1991). ‘ “To say that a person has standing is to say that that person is a proper party to bring the action.” ’
 
 Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found.,
 
 881 So.2d 1013, 1019 (Ala.2003)(quoting
 
 Doremus [v. Business Council of Alabama Workers’ Comp. Self-Insurers Fund],
 
 686 So.2d [252,] 253 [ (Ala.1996) ]). ‘Standing ... turns on “whether the party has been injured in fact and whether the injury is to a legally protected right.” ’
 
 State v. Property at 2018 Rainbow Drive,
 
 740 So.2d 1025, 1027 (Ala.1999)
 
 (quoting Romer v. Board of County Comm’rs of the County of Pueblo,
 
 956 P.2d 566, 581 (Colo.1998) (Kourlis, J., dissenting))(emphasis omitted).”
 

 Proctor’s negligence and wantonness claims are based on the actions of Classic and its salesmen during the negotiation and execution of the automobile lease
 
 *1289
 
 agreement. If, in fact, any negligence or wantonness occurred, it did not result in injury to
 
 Proctor.
 
 Thus, because Proctor was not injured in fact and because he does not possess a legally protected right upon which he bases his claims for redress, he lacked standing to sue Classic alleging negligence and wantonness.
 

 “When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.”
 
 State v. Property at 2018 Rainbow Drive,
 
 740 So.2d 1025, 1028 (Ala.1999). Because lack of standing is a jurisdictional defect, this court may notice it
 
 ex mero motu. Harris v. Mitchell,
 
 958 So.2d 884, 889 (Ala.Civ.App.2006). Although the trial court did not explain its reason for entering the summary judgment in favor of Classic on Proctor’s negligence and wantonness claims, we may affirm a summary judgment on any valid ground, even one not argued to the trial court.
 
 [2]
 

 Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C.,
 
 881 So.2d 1013, 1020 (Ala.2003). We therefore affirm the trial court’s summary judgment in favor of Classic on the negligence and wantonness claims.
 

 Proctor also asserted a fraud claim against Classic based upon an alleged misrepresentation regarding Proctor’s ability to return the Cadillac and regain possession of the Bonneville. Classic presented evidence indicating that the Bonneville was sold to a third party on July 21, 2005, and that the Bonneville was no longer owned by the dealership on July 22, 2005. “ ‘ “The elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence.” ’ ”
 
 McCutchen Co. v. Media Gen., Inc.,
 
 988 So.2d 998, 1001 (Ala.2008) (quoting
 
 Allstate Ins. Co. v. Eskridge,
 
 823 So.2d 1254, 1258 (Ala.2001) (quoting in turn
 
 Brushwitz v. Ezell,
 
 757 So.2d 423, 429 (Ala.2000))). Although Proctor testified in his deposition that he had telephoned the dealership at around 8:00 a.m. on July 22, 2005, the day after Rhonda had executed the automobile lease agreement, his testimony about that conversation does not contain any alleged misrepresentation made by a Classic representative. Proctor testified that he told a woman who he believed to be the receptionist, “I’m bringing the [Cadillac] back, you know, not get rid of my car, the [Bonneville].” Although Proctor did telephone Classic a second time later that morning, Proctor never testified that any person he spoke to at Classic ever assured him that he could return the Cadillac and reclaim possession of the Bonneville. Proctor has failed to present evidence indicating that any representative of Classic made a misrepresentation regarding the Bonneville. The summary judgment for Classic on Proctor’s fraud claim is therefore affirmed.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [1]
 

 . Section 38-9-7(a) provides:
 

 "(a) It shall be unlawful for any person to abuse, neglect, exploit, or emotionally abuse any protected person. For purposes of this section, residence in a nursing home, mental institution, developmental center for the mentally retarded, or other convalescent care facility shall be prima facie evidence that a person is a protected person. Charges of abuse, neglect, exploitation, or emotional abuse may be initiated upon complaints of private individuals, as a result of investigations by social service agencies, or on the direct initiative of law enforcement officials.”
 

 [2]
 

 . This rule is subject to certain exceptions when due-process constraints would require notice.
 
 Liberty Nat’l Life Ins. Co.,
 
 881 So.2d at 1020. Because the lack of standing pre-eludes the acquisition of subject-matter jurisdiction, the exceptions are not applicable here.
 
 Property at 2018 Rainbow Drive,
 
 740 So.2d at 1028.