THOMAS, Judge.
This court’s opinion of June 24, 2011, is withdrawn, and the following is substituted therefore.
Vernon H. Gilchrist and Willa Mae Gilchrist (hereinafter collectively referred to at times as “the Gilchrists”) obtained a $25,000 equity line of credit from SunTrust Bank (“SunTrust”) in 1987, which was secured by their home (“the Gilchrist home”); the Gilchrists also had a checking account with SunTrust. In December 2003, the Gilchrists executed durable powers of attorney naming Kenneth Gilchrist, their son, and Vivian Marsheila Woods, their daughter, as joint attorneys-in-fact. The Gilchrists executed a second and third power of attorney following Kenneth’s death in April 2005, naming Woods as the Gilchrists’ attorney-in-fact. The Gilchrists both suffered from significant health problems, requiring in-home care from caregivers and requiring Woods to handle many of their financial affairs.
In January 2005, Kenneth accompanied Vernon to SunTrust, where Vernon signed a check withdrawing $8,000 from the equity line of credit; Woods questioned the validity of the $8,000 withdrawal. The Gil-christs then stopped making payments on the equity line of credit, and the debt became delinquent and in default. In November 2005, SunTrust withdrew $1,899 from the Gilchrists’ checking account to offset part of the delinquent equity-line-of-credit debt. SunTrust did not receive any more payments on the debt.
In the spring of 2005, SunTrust began collection efforts on the delinquent equity-line-of-credit debt. SunTrust made numerous telephone calls to the Gilchrist home in reference to the delinquent debt.[1] The telephone calls were answered by various caregivers or Woods; the caregivers would relay the content of the telephone calls that they had received to Woods. Some of the collection calls were directed to the Gilchrists’ attorney. Woods and the caregivers instructed SunTrust to direct all of its telephone calls regarding the debt to the Gilchrists’ attorney; however, Sun-Trust continued to call the Gilchrist home. Willa Mae died on October 1, 2005.
In March 2006, SunTrust began foreclosure proceedings on the Gilchrist home. On April 5, 2006, Vernon and Woods, in her individual capacity, as attorney-in-fact for Vernon, and as the executrix of the estate of Willa Mae,[2] filed a complaint in the Lauderdale Circuit Court.[3] In their complaint, Vernon and *361 Woods sought temporary and permanent injunctions to prevent SunTrust from foreclosing on the Gilchrist home. Vernon and Woods also sought a declaratory judgment determining that Vernon was not indebted to SunTrust, requiring SunTrust to make a detailed accounting of all transactions relating to Vernon’s account, and declaring that the pending mortgage foreclosure was invalid. Vernon and Woods further asserted claims of invasion of privacy, conversion of moneys, slander of title, “outrageous debt collection practices,” breach of contract, breach of the peace, breach of a fiduciary relationship, negligence, wantonness, and the tort of outrage. Vernon and Woods requested a jury trial on their claims and sought compensatory and punitive damages.
On August 10, 2007, Woods filed a suggestion of death with the trial court, stating that Vernon was deceased.
SunTrust stopped its foreclosure efforts, answered the complaint, and, on September 19, 2007, filed a counterpetition, in which it sought a declaratory judgment determining that the Gilchrists were indebted to SunTrust, that SunTrust had a valid and existing right to proceed with a foreclosure against the Gilchrist home, and that the sums due under the equity line of credit had become due and payable in full on January 28, 2007.
On November 19, 2007, Woods filed a motion to substitute the estate of Vernon H. Gilchrist (hereinafter referred to as “the estate”), by and through the estate’s personal representative, Woods, as one of the plaintiffs in the case, in place of Vernon. The trial court granted the motion.
On July 10, 2009, SunTrust filed a motion for a summary judgment in favor of it on each claim in Woods’s and the estate’s complaint and on its counterpetition for a declaratory judgment. Following extensive briefing by the parties, and after conducting a hearing on the motion, the trial court entered a partial summary judgment on November 30, 2009. The trial court entered a summary judgment in favor of SunTrust on all the estate’s claims except for its claims of negligence and wantonness relating to the $8,000 withdrawal. The trial court also entered a summary judgment in favor of SunTrust on each of Woods’s individual claims except for her claim of invasion of privacy. In its partial summary judgment, the trial court also denied Woods’s and the estate’s claims for declaratory and injunctive relief. The trial court further determined:
“[SunTrust’s] motion for Declaratory Judgment on its [counterpetition] establishing a valid debt owed by the Gil-christs under the equity line agreement for which the Gilchrist[s] are in default is GRANTED. [SunTrust] has a valid and existing right to proceed with the remedies available to it, despite a jury question regarding the $8,000 of the $24,157.83 indebtedness.”
In January 2010, SunTrust renewed its efforts to foreclose on the Gilchrist home. On February 4, 2010, the estate moved the trial court to enter a temporary injunction to prevent SunTrust from foreclosing on the Gilchrist home. In its motion, the estate stated that SunTrust was claiming an unpaid principal balance of $137,320.10, comprising $16,157.83 on the debt and *362 $121,162.27 in attorneys fees. The estate requested that the trial court enjoin the foreclosure “pending a jury determination of a reasonable attorney’s fee and other issues before this court.” The trial court denied the motion on February 5, 2010. On February 8, 2010, the estate filed a motion titled “Motion to Set Aside Mortgage Foreclosure and to Redeem Mortgage,” in which the estate alleged that the foreclosure sale had taken place and that the estate had attempted to tender $16,157.83 at the sale, which had been refused in favor of SunTrust’s bid of $187,320.10. The estate claimed that the reasonableness of the attorneys fees associated with the indebtedness could not be determined “until a jury is empaneled to hear [the] case and the reasonableness of the attorney fees are presented to the jury for determination.” The estate also claimed that the foreclosure sale was “unlawful, illegal, unauthorized, and fraudulent.” The estate requested that the trial court set aside the foreclosure and determine that any foreclosure deed issued following the sale would be void.
The estate’s claims of negligence and wantonness and Woods’s claim of invasion of privacy proceeded to a jury trial, which began on February 10, 2010. Before the trial, on January 28, 2010, SunTrust had filed a motion in limine, requesting that the trial court exclude any evidence or testimony concerning the frequency and content of telephone calls made to the Gilchrist home by SunTrust that were received by individuals other than Woods. SunTrust later submitted a brief in support of its motion. After hearing arguments of counsel, the trial court granted SunTrust’s motion.
The jury returned a verdict in favor of SunTrust on the estate’s claims of negligence and wantonness and on Woods’s claim of invasion of privacy. The trial court entered a judgment on the jury’s verdict on February 22, 2010. Woods and the estate subsequently appealed to this court on April 1, 2010. We transferred the appeal to the Alabama Supreme Court for lack of subject-matter jurisdiction. Our supreme court transferred the appeal back to this court pursuant to § 12-2-7(6), Ala. Code 1975. This court assigned case number 2090627 to the appeal.
On August 27, 2010, the trial court purported to deny the estate’s February 8, 2010, motion to set aside the foreclosure and purported to set the amount required for redemption of the Gilchrist home at $137,320.10. The estate filed a petition for a writ of mandamus in the supreme court in relation to the trial court’s August 27, 2010, order, together with a notice of appeal from that same order. Our supreme court transferred the petition for a writ of mandamus and the appeal to this court. This court assigned the petition for a writ of mandamus case number 2100034 and the appeal case number 2100089.

Analysis

I. Denial of injunction prohibiting mortgage foreclosure
The estate first argues in case number 2090627 that the trial court erred by not issuing an injunction preventing SunTrust from foreclosing on the Gilchrist home. The estate, in its complaint, requested that the trial court enjoin SunTrust from foreclosing on the Gilchrist home during the pendency of the action. The trial court denied the estate’s request for injunctive relief in its November 30, 2009, partial summary judgment. On February 4, 2010, the estate again moved the trial court to issue a preliminary injunction, requesting that the trial court enjoin SunTrust from conducting a foreclosure sale of the Gilchrist home until, the estate said, a jury could determine a reasonable amount of attorney fees associated with the foreclo *363 sure. The trial court denied the estate’s second request for injunctive relief on February 5, 2010.
Rule 4(a)(1), Ala. R.App. P., provides that an appeal from an interlocutory order denying an injunction shall be filed within 14 days of the entry of the order. The estate did not appeal from either of the trial court’s orders denying its request for an injunction within the 14-day time limit prescribed in Rule 4(a)(1); therefore, its appeal is untimely insofar as it challenges the trial court’s denial of its requests for injunctive relief. See Rule 4(a)(1). Because the filing of a timely notice of an appeal is a prerequisite to the exercise of this court’s appellate jurisdiction, see Miller Props., LLC v. Green, 958 So.2d 850, 851 (Ala.2006), this court lacks jurisdiction over the estate’s appeal insofar as it challenges the trial court’s denial of its requests for injunctive relief, and, thus, we cannot consider its argument that Sun-Trust should have been enjoined from foreclosing on the property until a jury could determine the reasonable attorneys fees associated with the foreclosure.
Moreover, the estate can no longer be awarded the relief it sought in its request for an injunction to prevent SunTrust from foreclosing on the property until a jury determination of the attorneys fees associated with the foreclosure. After the trial court entered its order allowing SunTrust to proceed with the foreclosure, SunTrust foreclosed on the property. Thus, the estate’s request for injunctive relief is now moot. “This Court will dismiss an appeal from the denial of an injunction when an event occurring after the denial of the injunction renders the appeal moot.” Employees of the Montgomery Cnty. Sheriff’s Dep’t v. Marshall, 893 So.2d 326, 330 (Ala.2004). Because the estate’s appeal in case number 2090627, insofar as it challenges the trial court’s denial of its request for injunctive relief and its request to have a jury determination of attorneys fees before the foreclosure sale, is untimely, and because the issue is now moot, we dismiss the estate’s appeal as to that issue.
II. Denial of jury trial on attorneys fees
The estate next argues in case number 2090627 that the issue of what constituted reasonable attorneys fees associated with SunTrust’s foreclosure of the Gilchrist home should have been determined by a jury. The trial court’s November 30, 2009, and February 5, 2010, orders denying the estate’s requests to enjoin SunTrust’s foreclosure of the property also effectively denied the estate’s request to have a jury determine the issue of what constituted reasonable attorneys fees associated with the foreclosure. Although the estate attempts to challenge on appeal the trial court’s failure to present the issue of attorneys fees to the jury, our supreme court has explained that the appropriate vehicle for challenging the denial of a jury-trial request is a petition for a writ of mandamus. “‘The rights of the parties secured by those statutory provisions [providing for a right to a trial by jury] are subject to the enforcement by mandamus in view of the fact that as a rule there would not be an adequate remedy by appeal from the final judgment. ’ ” Ex parte Moore, 880 So.2d 1131, 1133-34 (Ala.2003) (quoting Ex parte Merchants Nat’l Bank of Mobile, 257 Ala. 663, 664, 60 So.2d 684, 685 (1952)) (emphasis added).
After the trial court denied its request to enjoin the foreclosure sale and have a jury determine the amount of attorneys fees, the estate, on February 9, 2010, filed a motion titled “Motion to Set Aside Mortgage Foreclosure and to Redeem Mortgage.” In its reply brief on appeal, the *364 estate characterizes this motion as “an attempt ... to get the trial court to correct its Order of foreclosure.... ” Thus, based on the estate’s own characterization of the motion, the estate’s motion appears to be a “motion to reconsider” the trial court’s interlocutory order denying its request for injunctive relief and to have a jury determine the amount of attorneys fees. On February 25, 2010, the estate petitioned the Alabama Supreme Court for a writ of mandamus directing the trial court to submit the issue of attorneys fees to the jury. Our supreme court denied the estate’s petition on March 24, 2010, without issuing a written opinion. Ex parte Woods (No. 1090704, March 24, 2010) - So.3d - (Ala.2010) (table). Because the question whether the issue of what constituted reasonable attorneys fees should have been determined by a jury is not proper for consideration on appeal, we need not further consider this issue.
III. Jurisdiction of trial court to rule on motion to set aside foreclosure sale
The trial court, on August 27, 2010, over six months after entry of its judgment following the jury trial, purported to enter an order denying the estate’s motion to set aside the foreclosure sale and setting the amount for redemption at $137,320.10, which amount consisted of $16,157.83 in loan debt and $121,162.27 in attorneys fees. The estate argues in its petition for a writ of mandamus, case number 2100034, that the trial court did not have jurisdiction to enter its August 27, 2010, order. We agree, although for different reasons than those asserted by the estate.
“A petition for a writ of mandamus is the proper method for obtaining review of a trial court’s authority to rule on a posttrial motion beyond the time period set forth in Rule 59.1, Ala. R. Civ. P. See Ex parte Chamblee, 899 So.2d 244, 244-45 (Ala.2004) (granting petitions for the writ of mandamus that ‘implicate[d] the authority of the trial judge under Rule 59.1....’). See also Ex parte Davidson, 782 So.2d 237 (Ala.2000), in which this Court issued the writ of mandamus setting aside the trial court’s order, entered after posttrial motions had been denied by operation of law pursuant to Rule 59.1, as void.”
Ex parte Jackson Hosp. & Clinic, Inc., 49 So.3d 1210, 1211 (Ala.2010).
The estate’s motion to set aside the foreclosure sale, which, as noted earlier, it characterizes as a “motion to reconsider” the trial court’s interlocutory order denying the estate’s request for injunctive relief and its demand for a jury trial on the issue of attorneys fees, was filed before the entry of a final judgment in the case. Once the trial court entered its February 22, 2010, judgment, the estate’s motion quickened into a postjudgment motion. See Richardson v. Integrity Bible Church, Inc., 897 So.2d 345, 347 (Ala.Civ.App.2004) (“[A] premature postjudgment motion that, if it had been directed to a final judgment, would toll the time for filing a notice of appeal from a final judgment (see Ala. R.App. P., Rule 4(a)(3)) ‘quickens’ on the day that the final judgment is entered.”). The trial court then had 90 days to rule on the motion. See Rule 59.1, Ala. R. Civ. P. (“No postjudgment motion filed pursuant to Rules 50, 52, 55, or 59 shall remain pending in the trial court for more than ninety (90) days.... A failure by the trial court to render an order disposing of any pending postjudgment motion within the time permitted hereunder, or any extension thereof, shall constitute a denial of such motion as of the date of the expiration of the period.”).
The trial court entered its final judgment on February 22, 2010. Therefore, the estate’s motion was denied by *365 operation of law on May 24, 2010, and the trial court thereafter lost jurisdiction to rule on the motion.[4] “If a motion is so denied by operation of law, ‘the trial judge then loses jurisdiction to rule on the motion’ and is ‘without jurisdiction to enter any further order in [the] case after that date.’ ” Ex parte Limerick, 66 So.3d 755, 757 (Ala.2011) (quoting Ex parte Davidson, 782 So.2d 237, 241 (Ala.2000)). Accordingly, the trial court’s August 27, 2010, order purportedly ruling on the estate’s motion is void. Id. Therefore, the estate’s petition is due to be granted, and, accordingly, we issue the writ directing the trial court to vacate its August 27, 2010, order.
In case number 2100089, filed along with its petition for a writ of mandamus (case number 2100034), the estate also challenges the trial court’s jurisdiction to enter its August 27, 2010, order. Because we have concluded that a petition for a writ of mandamus is the appropriate vehicle for challenging the trial court’s jurisdiction to enter its August 27, 2010, order, the estate’s appeal on that same issue is moot and is due to be dismissed.
IV. Grant of SunTrust’s motion in limine excluding evidence of telephone calls
In case number 2090627, Woods argues that the trial court erred when it granted SunTrust’s motion in limine, excluding evidence and testimony concerning certain telephone calls made to the Gilchrist home by SunTrust that were received by various caregivers of the Gil-christs. Woods argues that the telephone calls were relevant to her individual claim of invasion of privacy.
“Alabama recognizes that a person has an actionable right to be free from
the invasion of privacy. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (1961). The debtor-creditor aspect of this right has been characterized as:
“ ‘ “the wrongful intrusion into one’s private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.” ... ’
“Smith v. Doss, 251 Ala. 250, 253, 37 So.2d 118 (1948) (quoting with approval 41 Am.Jur. Privacy, § 2 p. 925 (1942)).”
Jacksonville State Bank v. Barnwell, 481 So.2d 863, 865 (Ala.1985). Alabama courts have also recognized that
“[t]he mere efforts of a creditor ... to collect a debt cannot without more be considered a wrongful and actionable intrusion. A creditor has and must have the right to take reasonable action to pursue his debtor and collect his debt. But the right to pursue the debtor is not a license to outrage the debtor. The problem of defining the scope of the right of privacy in the debtor-creditor situation is the problem of balancing the interest of the creditor in collecting his debt against that of the debtor in his own personality. Some courts appear to have struck that balance on the so-called ‘rule of reason.’ Thus in the recent case of Housh v. Peth, 99 Ohio App. 485, 135 N.E.2d 440, 449 [ (1955) ], affirmed 165 Ohio St. 35, 133 N.E.2d 340 [(1956)], the Ohio appellate courts asserted that ‘a creditor has a right to take reasonable action to pursue his debtor and pur-suade payment, although the steps taken may result to a certain degree in the invasion of the debtor’s right of privacy,’ but that the debtor has a cause of action *366 for injurious conduct on the part of the creditor which exceeds the bounds of reasonableness. We approve this statement.”
Norris v. Moskin Stores, Inc., 272 Ala. 174, 177, 132 So.2d 321, 323 (1961).
In Barnwell, the bank attempted to collect on a debt Barnwell owed to it. 481 So.2d at 865. The bank placed numerous telephone calls to Barnwell’s home and place of employment. Id. The bank also fraudulently added two automobiles owned by Barnwell as collateral on the debt and attempted to repossess the automobiles. Id. When a representative of the bank went to Barnwell’s place of employment and attempted to repossess one of the automobiles, the bank’s representative “caused a great deal of commotion” and used “coarse, inflammatory, malicious, and threatening language” in front of Barnwell’s coworkers. Id. at 865, 866. The bank’s actions at Barnwell’s place of employment caused Barnwell to be twice reprimanded at work. Id. at 865. The Alabama Supreme Court held that that evidence was sufficient to support the jury’s determination that the bank’s actions directed at Barnwell were “outrageous to a person of ordinary sensibilities.” Id. at 866.
In Norris, supra, a representative of a merchant, in attempting to collect a debt from Norris, called Norris’s wife and sister-in-law, claiming to be a woman that had been dating Norris. 272 Ala. at 175-76, 132 So.2d at 322. The representative “ ‘led persons to whom she was speaking into believing that [Norris] had engaged, or was engaging, in activities contrary to the recognized conventions of his marital status.’ ” 272 Ala. at 176, 132 So.2d at 322. Norris sued the merchant alleging invasion of privacy. 272 Ala. at 175, 132 So.2d at 321. The merchant moved to dismiss the claim; the trial court granted the merchant’s motion. Id. The Alabama Supreme Court reversed the trial court’s dismissal, holding that Norris’s complaint, in which he had alleged that the merchant had contacted Norris’s wife and sister-in-law and had made them believe that Norris had been unfaithful in his marriage, set forth “sufficient ‘harassment’ and that the activities of the [merchant] [fell] beyond the realm of reasonable action and into the area of wrongful and actionable intrusion.” 272 Ala. at 178, 132 So.2d at 325.
In this case, Woods, who is not the debtor, is alleging that SunTrust invaded her privacy by placing telephone calls to the Gilchrist home, directed to the Gilchrists, regarding a debt owed by the Gilchrists. Unlike in Barnwell or Norris, there are no allegations that SunTrust placed any calls to Woods’s residence or place of employment, that SunTrust claimed that Woods owed the debt, or that SunTrust made any comments regarding Woods’s personal affairs — all of SunTrust’s actions were directed toward the debtors, the Gilchrists. In short, there is no evidence indicating that SunTrust in any way “intruded into [Woods’s] private activities”; rather, any possible intrusion would have been only to the private activities or affairs of the Gilchrists. “[T]he right of privacy is a personal right, and [Alabama courts have] not recognized a ‘relational right to privacy.’ ” Fitch v. Voit, 624 So.2d 542, 543 (Ala.1993). Because all the telephone calls excluded from evidence were placed to the Gilchrist home, directed to the Gil-christs, and were in regard to a debt owed by the Gilchrists, the telephone calls that were received by the caregivers cannot support, and, thus, are not relevant to, the claim by Woods that SunTrust had violated her individual right of privacy.
“The decision to grant or deny a motion in limine rests within the sound discretion of the trial court, and that deci *367 sion will not be overturned on appeal unless the trial court exceeds the limits of its discretion.” Guthery v. Persall, 26 So.3d 1250, 1254 (Ala.Civ.App.2009) (citing Ex parte Jackson, 836 So.2d 979, 985 (Ala.2002)). Because the excluded testimony and evidence concerning the telephone calls at issue were not relevant to Woods’s claim of invasion of privacy, the trial court did not exceed the limits of its discretion when it granted SunTrust’s motion in li-mine.
V. Propriety of the summary judgment on Woods’s individual claims of negligence and wantonness
In case number 2090627, Woods next argues that the trial court erred when it entered a summary judgment in favor of SunTrust on her claims of negligence and wantonness. In her brief, Woods claims that SunTrust was negligent and wanton in its attempted collection of the Gilchrists’ debt because it (1) listed the wrong address in its foreclosure notice; (2) failed to provide the attorney who was representing the Gilchrists and Woods an itemized accounting of the debt; (3) “unlawfully” foreclosed on the property without a jury determination of attorney fees; (4) continued to call the Gilchrist residence after being informed that it should contact the Gil-christs’ attorney, allegedly in violation of SunTrust’s internal rules and regulations; and (5) violated its internal rules and regulations by allegedly converting funds from the Gilchrists’ checking account.
“To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. Albert v. Hsu, 602 So.2d 895, 897 (Ala.1992).” Martin v. Arnold, 643 So.2d 564, 567 (Ala.1994). Further, “ ‘[t]he absence of any one of these [elements] renders .... the evidence insufficient [to establish negligence].’ ” Franklin v. City of Athens, 938 So.2d 950, 953 (Ala.Civ.App.2005) (quoting Calvert Fire Ins. Co. v. Green, 278 Ala. 673, 677, 180 So.2d 269, 273 (1965)). Whether a legal duty exists is a question of law. Rose v. Miller & Co., 432 So.2d 1237, 1238 (Ala.1983). “To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains.” Martin, 643 So.2d at 567.
The negligence and wantonness claims that Woods has asserted involve SunTrust’s actions in attempting to collect a debt owed by the Gilchrists on property owned by the Gilchrists. The bank account that contained the funds that she alleges were converted by SunTrust was the Gilchrists’ account. Thus, Woods is attempting to bring an action in her individual capacity based on alleged duties owed to the Gilchrists and alleged harms to the interests of the Gilchrists, not to her own individual interests. A party does not have standing to bring an action based on harms to a third party. See Proctor v. Classic Auto., Inc., 20 So.3d 1281, 1289 (Ala.Civ.App.2009). As this court explained in Proctor:
“ ‘A party must allege an individual or representative right and a redressable injury to that right as a prerequisite to setting in motion the machinery of the court. See 59 Am.Jur.2d Parties § 31 (1987). In order to be a “proper party plaintiff, a person must have an interest in the right to be protected.” Eagerton v. Williams, 433 So.2d 436, 447 (Ala.1983). As a general rule, “a litigant may not claim standing to assert the rights of a third party.” Jersey Shore Medical *368 Center-Fitkin Hosp. v. Estate of Baum, 84 N.J. 137, 417 A.2d 1003 (1980). A party lacks standing to invoke the power of the court in his behalf in the absence of “a concrete stake in the outcome of the court’s decision.” Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932, 937 (Ala.1983).’ ”
Proctor, 20 So.3d at 1288 (quoting Ex parte Izundu, 568 So.2d 771, 772-73 (Ala.1990)).
Because Woods’s negligence and wantonness claims are based on alleged injuries to the Gilchrists, not to herself, she lacked standing to assert those claims. “When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.” State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). We note that the trial court did not explain its reasons for entering a summary judgment in favor of SunTrust on Woods’s negligence and wantonness claims; however, this court may affirm a summary judgment for any valid legal ground, subject to certain limitations not applicable in this case. Liberty Nat’l Life Ins. Co. v. University of Alabama Health Sens. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003). Therefore, we affirm the trial court’s summary judgment on Woods’s negligence and wantonness claims.
VI. Propriety of the summary judgment on Woods’s individual claim of conversion and the estate’s claim of conversion
In case number 2090627, Woods and the estate next argue that the trial court erred when it entered a summary judgment on Woods’s claim of conversion and the estate’s claim of conversion.
“Our review of a summary judgment is de novo. ‘A motion for summary judgment is granted only when the evidence demonstrates that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c), Ala. R. Civ. P.’ Reichert v. City of Mobile, 776 So.2d 761, 764 (Ala.2000). We apply ‘the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact.’ Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); System Dynamics Int’l, Inc. v. Boykin, 683 So.2d 419, 420 (Ala.1996). In order to defeat a properly supported motion for a summary judgment, the nonmoving party must present substantial evidence that creates a genuine issue of material fact. ‘Substantial evidence’ is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
Borders v. City of Huntsville, 875 So.2d 1168, 1176-77 (Ala.2003). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw. See Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000); and Fuqua v. Ingersoll-Rand Co., 591 So.2d 486, 487 (Ala.1991).
Woods and the estate assert that Sun-Trust converted $1,899 in funds from the Gilchrists’ checking account when it removed the funds from the account to offset part of the delinquent debt that SunTrust claimed was owed by the Gilchrists. Woods and the estate argue that SunTrust violated its own rules and regulations by removing the funds from the account be *369 cause, they argue, the account contained more than 50% in Social Security deposits at the time of the removal of the funds.
The rules and regulations applicable to the Gilchrists’ SunTrust checking account state:
“If you owe SunTrust money as a borrower, guarantor, or otherwise, and it becomes due, the Bank shall have the right under the law (called right of offset or setoff) and under these rules and regulations (by which you grant Sun-Trust a security interest in your Account) to use the money from your Account to pay the debt, even if withdrawal results in an interest penalty or dishonor of checks.”
SunTrust also has a policy that states that it would not exercise its right of offset on “[ajccounts with more than 50% of the deposits coming from Social Security Funds.” Thus, it is clear that SunTrust had the authority under its rules and regulations, to which the Gilchrists’ agreed when they opened their account, to offset the amount of the delinquent debt, provided that the Gilchrists’ checking account did not contain more than 50% in funds from Social Security deposits.
The evidence shows that for the statement period covering October 12, 2005, through November 8, 2005, during which time SunTrust exercised its right of offset, the Gilchrists’ checking account contained the following deposits: a $1,546.37 deposit, which was not identified as coming from any particular source; a $429.03 deposit of pension benefits; a $732.82 deposit of retirement benefits; a $1,394 deposit of Social Security benefits; and a $255 deposit of Social Security benefits. Thus, for the statement period in question, the account contained $4,357.22 in deposits, $1,649 of which are identifiable as being Social Security deposits. Thus, 37.9% of the deposits in the Gilchrists’ checking account were identifiable as Social Security deposits.
Woods and the estate argue on appeal that the $1,546.37 deposit consisted of military-retirement benefits, which they assert are also not available for purposes of offset. Woods and the estate also made this argument in opposition to SunTrust’s motion for summary judgment. However, their argument consisted only of statements made by counsel in the supplemental brief in opposition to SunTrust’s motion for a summary judgment; the argument was not supported by any evidence that the $1,546.37 deposit did, in fact, consist of military-retirement benefits. It is well settled that
“ ‘[mjotions and arguments of counsel are not evidence.’ Williams v. Akzo Nobel Chemicals, Inc., 999 S.W.2d 836, 845 (Tex.App.1999). ‘[Statements in motions are not evidence and are therefore not entitled to evidentiary weight.’ Singh v. Immigration & Naturalization Serv., 213 F.3d 1050, 1054 n. 8 (9th Cir.2000). ‘[B]riefs submitted in support of motions are not evidence to be considered by the Court in resolving a summary judgment motion.’ Direct Media Corp. v. Camden Tel. & Tel. Co., 989 F.Supp. 1211, 1217 (S.D.Ga.1997).”
Fountain Fin., Inc. v. Hines, 788 So.2d 155,159 (Ala.2000). Therefore, Woods and the estate failed to present the trial court with substantial evidence indicating that the Gilchrists’ checking account contained more than 50% in Social Security funds when SunTrust exercised its right of offset. Accordingly, the trial court did not err when it entered a summary judgment on the estate’s claim of conversion and on Woods’s claim of conversion.

Conclusion

In case number 2090627, we dismiss the appeal insofar as it challenges the trial *370 court’s denial of the estate’s claim for in-junctive relief. We affirm the trial court’s determination to exclude certain telephone calls from evidence, and we affirm its entry of a summary judgment on the estate’s claim of conversion and on Woods’s claims of conversion, negligence, and wantonness.
In the estate’s petition for a writ of mandamus, case number 2100034, we grant the petition and issue a writ directing the trial court to vacate its August 27, 2010, order. We dismiss the appeal in case number 2100089 as moot.
2090627 —APPLICATION FOR REHEARING GRANTED; OPINION OF JUNE 24, 2011, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; APPEAL DISMISSED IN PART.
2100034 —ON APPLICATION FOR REHEARING IN CASE NO. 2090627: OPINION OF JUNE 24, 2011, WITHDRAWN; OPINION SUBSTITUTED. PETITION GRANTED; WRIT ISSUED.
2100089 —ON APPLICATION FOR REHEARING IN CASE NO. 2090627: OPINION OF JUNE 24, 2011, WITHDRAWN; OPINION SUBSTITUTED; APPEAL DISMISSED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. According to Woods, SunTrust made 104 telephone calls to the Gilchrist home.

. On June 12, 2006, the claims asserted by Woods as the attorney-in fact for Vernon were dismissed as were the claims of the estate of Willa Mae "to the extent that the suit alleges causes of action that did not survive her death.” The trial court later entered a summary judgment in favor of SunTrust on the remaining claims of the estate of Willa Mae. Those claims are not at issue in these appeals.

.In addition to naming SunTrust as a defendant, Vernon and Woods named SunTrust Banks, Inc., SunTrust Mortgage, Inc., Sun-Trust Real Estate Corporation, SunTrust Personal Loans, Inc., SunTrust Bank Tennessee Valley, and Jeff Kelsey as defendants. The trial court dismissed all the named defendants, with the exception of SunTrust, as par *361 ties. Vernon and Woods also asserted claims against several fictitiously named parties, but they never subsequently substituted any actual parties for those fictitiously named defendants. Because "[t]he beginning of trial operates as a dismissal of fictitiously named parties,” Ex parte Dyess, 709 So.2d 447, 452 (Ala.1997) (citing Rule 4(f), Ala. R. Civ. P.), the existence of the fictitiously named parties does not affect the finality of the judgment entered by the trial court.

. The 90th day following February 22, 2010, was Sunday, May 23, 2010. Therefore, the motion was deemed denied on Monday, May 24, 2010. See First Alabama Bank v. McGowan, 758 So.2d 1116 (Ala. Civ App. 2000), and Richburg v. Cromwell, 428 So.2d 621 (Ala.1983).